Cox, J.
This is a petition in error to reverse a judgment of the Superior Court of Cincinnati.
The action in that court was brought to recover the sum of $7,500, with interest from August 18, 1882, and costs.
The cause of action was set out in two counts :
First, after reciting that the plaintiff and defendant were corporate bodies, the plaintiff charged that at the time of the *200 transaction referred to, Theodore Cook was the president and Geo. F. Doughty the secretary of the defendant corporation; that the by-laws of the defendant provided, among other things, that the certificates of stock of the defendant should be issued under the corporate seal of the company and signed by the president and secretary, setting forth the number of shares which are owned by the party to whom each certificate should be issued; and, further, that the secretary should keep the office of the company open during business hours, and should be the custodian of the seal of the company, and should affix the same with the attestation thereof whenever the official business of the company should require it, and that he should keep the stock ledger, and make transfers of the stock of the company.
. Plaintiff further alleges that a certificate of stock was issued by the company, signed by the president and secretary, bearing the corporate seal.
The certificate is numbered 473, and certifies that Geo. F. Doughty is entitled to one hundred shares of $100 each, of the capital stock of the company. This is signed by Theodore Cook, President, and Geo. F. Doughty, Secretary, and on the back of the certificate was printed a blank assignment, authorizing -to transfer the same on the books of the company.
Plaintiff further says that about the 17th of May, 1882, Geo. F. Doughty borrowed of plaintiff $7,500, and executed and delivered to plaintiff his promissory note, payable to himself or order, for that amount at ninety days, and deposited with it said certificate of stock as collateral security, and gave to plaintiff the power in writing to sell or collect, by public or private sale, said stock on the non-payment of said note at maturity; and Doughty then indorsed said certificate of stock, and delivered the same to the plaintiff, who then became the owner of said note and certificate, with the right to have the same transferred on the books of the defendant.
That on the 23d of February, 1883, it presented said certificate with the indorsement to defendant at its office in Cincinnati, and demanded that the stock should be transferred to it on the books of the defendant, and that defendant should pay it the dividend due on said stock; but that defendant wholly *201 refused to so transfer it, and refused to pay the dividends declared on said stock, and refused to recognize plaintiff as a stockholder, or permit it to enjoy any of the rights of a stockholder.
That it made the loan of said money, wholly relying on the representation in said certificate that Doughty was then and there the owner of one hundred shares of the capital stock of defendant, and plaintiff says that defendant, by its acts, has deprived the plaintiff of the ownership of said shares of stock, and converted the same to its use, wherefore plaintiff asks damage for $10,000.
This count proceeds upon the theory that the certificate of stock was the genuine issue of defendant.
The second count, after proceeding with similar allegations to those above stated, then sets out “ that said one hundred shares were, as defendant alleges, an excess of the capital stock, which the defendant was, by its charter, authorized to issue, and the same was issued by the president and secretary illegally, and is wholly void; but that plaintiff has no knowledge of the illegal issue or the illegality of the stock, except such as is derived from information from defendant’s officer, and that if said certificate was an overissue of the capital stock of defendant, and was thereby illegal and void, it was negligently and fraudulently issued by the defendant corporation and by its president and secretary, and the representations therein contained were falsely and fraudulently made to plaintiff, by which he was induced, in the usual course of business, to purchase and pay for said promissory note and certificate of stock, wherefore plaintiff prays for judgment against defendant for $7,500, with interest.”
On the trial of the c'ase below, defendant filed a motion to require plaintiff to state on which count he would proceed to trial, whether he would rely on the charge that the certificate of stock was a legal issue, or upon that which charges that it was not.
This motion was overruled by the court.
A motion was also made to require plaintiff to separately state and number his charges. This was also overruled.
*202 A motion was also made to strike out part of plaintiff’s petition, which was overruled in part, and granted in part, and leave given defendant to answer the same.
A motion was also made by defendant to require plaintiff to definitely state in its second cause of action, whether or not the stock therein described is or is not the valid issue of the capital stock .of the defendant. This motion was overruled.
June 13, 1883, defendant filed its answer in two counts, the first admitting that it is a corporation, and denying all the allegations of the petition. In the second count it states, that it is a corporation, and is a railroad; that its entire capital stock is three million of dollars, divided into shares of one hundred dollars each; that on the 8th day of October, 1881, the entire amount of said stock was subscribed for, fully paid and certificate issued to the respective subscribers therefor; that the pretended certificate for which suit was brought, was not issued by defendant, nor with its knowledge, or consent, or authority; but was issued by Geo. F. Doughty, fraudulently, for his own private purposes solety, and that Doughty did not then, nor has he since, owned said shares of capital stock intended to be represented by said certificate, and that the capital stock intended to be represented by said certificate is in excess of the capital stock of defendant, is an over-issue of said capital stock, void and of no effect, and represents no part of the capital stock of said company, of all which plaintiff had notice at the several times mentioned in the petition.
To this answer, plaintiff replied denying its allegation.
The case proceeded to trial before a jury, who returned a verdict finding for the defendant in the first cause of action, and for the plaintiff in the second cause, in the sum of $8,-473.75.
A motion for new trial was made by defendant, and overruled by the court, and judgment entered on the verdict.
This petition in error now assigns these causes of error :
1. Error of the court in overruling motion for new trial.
2. In refusing to give-charges asked for by plaintiff.
3. In giving charges asked for by defendant.
4. In overruling demurrer of defendant to petition.
5. In admission of evidence offered by defendant in error.
*203 6. In ruling out evidence offered by plaintiff in error.
7. That judgment was given for defendant in error instead of plaintiff in error.
8. Other errors appearing on the record.
At the hearing of the case in this court, considerable argument was made and stress laid upon the inconsistent character of the twocounts of the petition,one suing on the certificate as if it were genuine and legal, and the other as if spurious and void, but issued through the negligence of defendant; and it was claimed that the motion to require plaintiff to specify the count on which he proceeded should have been granted, and also that it should specify in the second count whether it relied on the validity or invalidity of the issue of the certificate.
There should be no inconsistency between the different counts in a petition. The supreme court in Ferguson v. Gilbert & Rust, 16 Ohio State Rep., 91, says, “ and as the Code requires pleadings to be verified by affidavit, we must assume that the plaintiff did not claim or intend under the second and general count to set up and prove a state of facts inconsistent with the allegations of the first.” A different rule prevails as to an answer. By our Code a defendant may plead as many defenses as he may have, although they be inconsistent with each other. R. S., 5071; 29 Ohio St., 651, 655.
But we can not see any force in this argument in regard to the first count.
The jury found for the defendant on the first cause of action, and there is no judgment against it on that count, of which it can complain, and no prejudice to plaintiff.
It is also claimed that the court erred in overruling the demurrer to the second count.
First — Because plaintiff alleged in that count enough to show that the certificate was valid; and,
Second — That it did not allege that it was void, but only that defendant said it was void.
It is said this is hypothetical pleading, which is never allowed either in law or in equity.
What are the allegations of the petition as to the issuing of the certificates? They are substantially as in the first count:
*204 “ That the defendant corporation issued the certificate of stock, duly signed by the president and secretary, bearing the corporate seal, and describing it as a genuine certificate; that it was for value received, transferred and assigned to plaintiff, and the plaintiff therefore became the owner of said one hundred shares.”
It nowhere in direct language affirms that the certificate was an overissue or illegal, but asserts that the defendant says it is an overissue, and is illegal and void.
The code requires a petition to contain a statement of facts constituting the cause of action in ordinary and concise language.
The statement of fact relied on in the count as the primary cause of action is, that the defendant issued in due form its certificate of stock; that the plaintiff became the owner and was entitled to have it transferred to its name and draw dividends, and that because it was .so refused, it has a cause of action; and the statement that defendant said, it was an over-issue, is but the statement of a reason assigned by the defendant why the transfer was not made, a statement made by defendant by way of defense to the plaintiff’s demand.
Suppose this were a petition filed to recover as for goods sold and delivered, and the plaintiff, after charging that he sold and delivered the goods to defendant, should aver that he demanded payment, and the defendant said he never purchased the goods nor were they delivered to him, and he refused to pay, what would be the issue to be tried by the court ? Not certainly what the defendant said about it, but the fact which the plaintiff alleged as the ground of action — to-wit, that he sold and delivered the goods to .the defendant.
So here, the plaintiff says the stock was issued by the defendant ; that it is the owner, and has a right to the transfer and dividends, and has been refused. These are the facts upon which his action rests. It counts on legally issued and valid stock. All the allegations of what defendant says, as to its illegality, are mere surplusage, and could have been reached by a motion to strike out.
*205 But the petition, after alleging the defense of defendants to the legality of the certificate, without admitting that it was an overissue or illegally issued, goes on to build up a case on what it alleges defendant claims, not in any pleading, but has informed it before any suit was brought, and proceeds to say that “ if the stock was an overissue, it was by reason of- defendant’s negligence and fraud.”
Now here is no positive statement that the certificate was illegally issued. One of the well known rules of pleading is, that the facts must be stated with requisite certainty. This is thus defined in Gould on Pleadings, Chap.'4, Sec. 23: “ It consists merely in alleging them so distinctly and explicitly as to exclude ambiguity, and make the meaning of the averments clearly intelligible.” Section 26: “ It is sufficient, if the averments are so made that the adverse party, the jury and the judges, can fully understand the subject matter.” Tested by this rule, can it be said that it can be fully understood whether in this count plaintiff relies and intends to maintain that the certificate sued on is a genuine one, or that it intends to admit that it was spurious, and to rely on fraud and negligence of the defendant in permitting it to be issued ?.
Now, although our statute is liberal in regard to the construction of pleadings, still I think that what Lord Coke calls “ certainty ” is still required by us. That is defined in Gould on Pleadings, chapter 3, section 54, as what upon a fair and reasonable construction, may be called certain, without recurring to possible facts which do not appear; that is, without denying or avoiding by anticipation, possible facts which may operate against him, and on the other hand, without the aid’ of any supposable facts or circumstances not alleged by him.
I do not understand this to be a pleading in the alternative. Such pleading is not favored; a prayer in the alternative may be allowed, and is of frequent practice. But even the use of that must be on facts alleged to exist. A good example of this is given in Cadwallader v. The Granville Society, 11 Ohio Rep., 290, where the court say : “ If this bill had been framed in the alternative, demanding of the defendants what property they acquired from Poster, charging that it was under an illegal and void agreement, and asking that it *206 might be set aside, or that if it should be held valid, the residuary interest of Poster might be subjected to the debt, it would afford an example,” etc.
The petition is open to the objection of improperly joining causes of action; as it stands, the defendant is necessarily driven to prepare and try one of two, or two causes of action :
First, to make such defense as he may have if the certificate were a legal one, and which may not involve any question of negligence in it, or any question of fraud, or illegal issue; and, second, another defense to a wholly different cause of action, involving illegality of issue, fraud and negligence. Each of these causes require different pleadings and different rules of evidence.
The object of pleading is, that the parties be brought to an issue, and that the issue so produced be material, single and certain in its quality. Stephens on Pleading, 155.
And the rule is thus laid down in Pomeroy on Remedies, 456: “ If the facts alleged in the pleading show that the plaintiff is possessed of two or more distinct rights, each of which has been invaded, or that the defendant has committed two or more distinct and separate wrongs, it follows inevitably that the plaintiff has united two or more causes of action; although the remedy applicable to each would be the same, the relief forms no part of the action.”
We are of the opinion, therefore, that the court erred in overruling the motion to require the plaintiff to state definitely in the second cause of action, whether or not the stock therein described is or is not the valid issue of the capital stock of the defendant.
The case proceeded to trial, however, on the second count, as if that where based on the ground that the certificate was illegally issued, and was so treated by the court' and the parties, and we think there was no error to the prejudice of defendant in overruling the motion.
In the course of the trial, numerous exceptions were taken to the rulings of the court.
The first is that the court erred in overruling the motion of plaintiff in error for judgment at the close of plaintiff’s testimony.
*207 On examining the record, we find that the court only overruled the motion for the present, with leave to renew it at a later period; but as we do not find the plaintiff renewed it, we think he lost any advantage he might have obtained if he had renewed it.
It is claimed that the court erred in permitting plaintiff below to re-open the case by cross-examination of defendant’s witnesses in support of the second count. But the exception only goes to the order of trial.
“ Allowing evidence out of its order is within the discretion of the court, and if ground of error at all, it is only when it appears that a fair trial was thereby prevented.” Webb v. State, 29 Ohio St., 351.
It is claimed that the court erred in refusing to allow the word “ cancelled,” on certain certificates, to go in evidence. We do not think the court erred in so ruling, as the evidence did not show that it had been placed there by Doughty, the secretary.
It is claimed that the court erred in giving charges 13 and 16£, as asked by the plaintiff.
As to charge 13, we think as given by the court, it was erroneous ; that the court should have, on the fifth line of said charge, added after the word petition: “ after inquiry of the officers of the company as to the genuineness and legality of the certificate.” Board of Education v. Sinton, 41 Ohio St., 513.
A certificate of stock is a document signed by the president and secretary of the company, showing the true amount of the stock held by a stockholder in a company. R. S., 3254. The certificate is not the stock, for a stockholder may be the owner of shares without having any certificate to evidence the fact; he may be the equitable owner although the stock appears on the books of the company in the name of another. R. S., 3259.
These certificates are not negotiable under our statutes. Sec. 3171 makes all bonds, promissory notes, bills of exchange, foreign and inland bills and checks for a sum certain and payable to any person or order, negotiable by endorsement or payable to any person or assigns, negotiable on delivery, and when *208 so negotiated, absolutely transfers and vests the property thereof in each and every endorsee or holder successively. R. S., 3171.
And he may maintain an action in his own name for the recovery thereof.
But a certificate of stock is not a promise to pay money, and therefore does not come under our statutory definition of a negotiable instrument. Nor is it negotiable under the ordinary significance in mercantile usage. Assignable is the more appropriate term to describe it. Daniel on Negotiable Instruments, section la.
And the person who takes it by assignment, takes only what right, if any, the assignor has in stocks which the certificate professes to represent. He takes it subject to all equities which may exist against it. Charter Oak Life Insurance Co. v. Smith, 3 Bulletin, 603.
A stockholder is only by statute, sec. 3255, entitled to a certificate for such stock as shall have been paid up. He may have the certificate and may have assigned it to another for value received, and yet by section 6255, while the certificate is out, the shares of stock being personal property, may have been levied on and sold upon execution against the owner, and the purchaser at such a sale would acquire an ownership, to the exclusion of the outstanding certificate.
And hence the necessity of the party who is about to purchase certificates of stock, to exercise care and prudence in making enquiries of the officers of the company as to the legality and genuineness of the stock.
Or the certificate may be a . forgery, or issued by persons wholly without authority. And hence the necessity of the party who is about to purchase certificates of stock in a corporation, to exercise care and prudence in making enquiries of the officers of the company as to the legality and genuineness of the certificate and the interest the assignor may have therein, for in all these respects the purchaser would only take the interest the assignor had in the certificate; and especially is this the case when the person claiming to own the certificate is an officer of the company charged with the duty of is *209 suing the certificate, and in his own name he issues it to himself.
Claflin v. The Farmers’ and Citizens’ Bank, 25 N. Y., 293, was a case where the president of a bank, having a general authority to certify checks, certified his own check when he had no funds in bank, and it was transferred to a purchaser for value, and without notice of the want of funds. Held that the bank was not liable to the purchaser. The certificate was beyond the president’s authority, and the purchaser could not claim the right of a bona fide holder, because the face of the check showing the president’s attempt to use his official character for his private benefit, every one to whom it comes is put upon inquiry, and when the certificate is false, no one can recover against the bank as a bona fide holder.
And in the case of the Board of Education v. Sinton, 41 O. S. Reports, 504, decided since this case came into this court, where Davis, being one of the Board of Education, which had issued bonds to which his name was signed officially, negotiated them to Sinton for value received. The supreme court decided “ that Sinton was not an innocent holder. The bonds disclosed on their face that Davis was one of the directors, and as such might well have possession of the paper without the right to dispose of it on his private account. Under these circumstances the duty of inquiry was put upon Sinton. And, having taken the bonds without inquiry, he was guilty in law of contributory negligence, and is not entitled to the position of an innocent purchaser. He dealt for his own gain with Davis alone, and trusted him at his peril; and we know of no principle of law that now entitles him to look to the tax-payers for re-imbursement.”
To this it was said, it would be of no use to make inquiry of Doughty, for he was guilty of the fraud. But to this answer, the Supreme court i-n Strong v. Strauss, 40 Ohio St., 89, and Board of Education v. Sinton, 41 Ohio St., 513, say : “ There is much force in the words of Sir John Romilly, Master of the Rolls, in a leading case, Jones v. Williams, 24 Beavan 62. With respect to the argument that it was unnecessary to make any •inquiry because it must have led to no result, he says ‘I think it is impossible to admit of the validity of an excuse.’ *210 I concur in the ruling in Jones v. Smith, 1 Hare, 55, that a false answer, or a reasonable answer, given to an inquiry made, may dispense with the necessity of inquiry; but I think it impossible beforehand to come to the conclusion, that a false answer would have been given which would have precluded the necessity of further inquiry.”
The court should have further instructed the jury in said charge, that to entitle the plaintiff to recover on the ground of negligence of the Board, that the negligence must be of such gross character as to be the equivalent of bad faith or fraud, and the loss must result as the natural and proximate consequence of such alleged omission of duty. And that if the loss of the plaintiff was directly occasioned by the criminal act of Doughty in issuing such false certificate, that even if the board was negligent in failing to examine the books of said company, and in discovering the wrong done by Doughty in other matters, that the crime of Doughty, and not such negligence of the board, was the natural and proximate cause of the loss.
This is the doctrine laid down by the supreme court in 41 O. S., 504-513, Board of Education v. Sinton, a cause decided by that court since this case was pending here. We think the principles cover this, and the court erred in not giving the law thus.
We think the court erred in not granting a new trial.
The testimony all tended to show that in issuing the certificate, Doughty did not act as the agent of the board, but was acting directly for himself, and the loss was not the natural or proximate result of the negligence of the board, but of the crime of Doughty.
In issuing the certificate Doughty was not the agent of the company. In the case decided by the Supreme Court of Massachusetts, May, 1885, reported in the November number of the American Law Record, page 393, Santiago Innerarity et al. v. Merchants’ National Bank, two or three points involved in this case are decided. The court says: “ The proposition that the director of a corporation acting avowedly for himself or in behalf of another, with whom he is interested in any transaction,' cannot be treated as the agent of the corporation therein, is *211 well sustained by authority. Citing 16 N. J. Eq., (1 C. E. Green) 229; 27 N. J. Eq., (12 C. E. Green), 88; 4 Md., 341; 18 Kansas, 480; 5 Denio, 330-337; 10 Fed. Rep., 251; L. R. 7 Ch. App., 170; 26 Mich., 44.
Uoadly, Johnson & Qolston, and Ramsey, Maxwell & Matthews, for plaintiffs in error.
Stallo, Kittredge & Wilby, and Paxton & Warrington, for defendant in error.
And in the same case the court says that: “ While the knowledge of an agent is ordinarily to be imputed to the principal, it would now appear to be well established that there is an exception to the construction or imputation of notice from the agent to the principal, in case of such conduct by the agent, as raises a conclusive presumption that he would not communicate the fact in controversy, as whén the communication of such a fact would necessarily prevent the consummation of a fraudulent scheme the agent was engaged in perpetrating.” 3 Myl. & K., 699; L. R. 15 Ch. D., 639; L. R. 5 Ch. App., 358; 7 Ch. App., 161; 118 Mass., 147; 135 Mass., 453.
Without going seriatim into every charge, we hold that all charges given by the court contrary to these principles, and those refused involving them, were erroneous, and the judgment will be reversed and case remanded to the superior court for a new trial.
Smith and Swing, JJ., concurred.