596 NEWBURYPORT v. FIDELITY INSURANCE CO. [197

CITY OF NEWBURYPORT vs. FIDELITY MUTUAL LIFE
INSURANCE COMPANY.

Suffolk. November 20, 1907. — February 29, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Bills and Notes. Municipal Corporations. Agency. Insurance,* Life. *Contract,* Implied. *Interest.*

One who receives the check of a city in payment of an individual debt of its city treasurer has notice on the face of the transaction that in the absence of express authority the check is invalid, and this is so irrespective of the existence of an ordinance prohibiting such an act.

In an action by a city against a life insurance company for money had and received by the defendant in successive annual payments of premiums, upon an individual life insurance policy of the treasurer of the city, made with checks of the city drawn by the treasurer, if it appears that the checks were made payable to the cashier of the defendant, who received them knowing that the insured was the treasurer of the city and indorsed and deposited them to the credit of the defendant in the ordinary course of business, this shows actual knowledge by the cashier that the checks were invalid, and is the knowledge of the defendant, whose alleged right to hold the payments is based on the ratification of its cashier's acts, so that the provision of R. L. c. 73, § 73, that the holder of a negotiable instrument to be chargeable with notice of a defect in the title of the person negotiating it must have had actual knowledge of such infirmity, does not help the defendant.

In an action by a city against a life insurance company for money had and received by the defendant in successive annual payments of premiums, upon an individual life insurance policy of the treasurer of the city, made with checks of the city drawn by the treasurer, the transaction showing that the defendant had actual knowledge that the checks were invalid, if it appears that the wrongful payments were a part of an extensive scheme of embezzlement carried on successfully by the city treasurer for six years, the failure of the auditing officers of the plaintiff to detect the embezzlement, even if they were negligent, is no defense to the action.

In an action by a city against a life insurance company, to recover the amount of premiums paid annually in six successive years on an individual life insurance policy of the city treasurer by checks of the city wrongfully drawn by the treasurer and payable to the defendant, it is no defense that the defendant is a mutual company and that before the action was brought it in good faith distributed the money received as premiums among its policy holders, and has on hand no money received from the plaintiff.

In an action by a city against a life insurance company, to recover the amount of premiums paid annually in successive years on an individual life insurance policy of the city treasurer by checks wrongfully drawn by the treasurer and payable by the defendant, where the receipt of the checks by the defendant shows

actual notice of their invalidity, evidence offered by the defendant as bearing upon the question of constructive notice properly is excluded as immaterial.

In an action by a city against a life insurance company, to recover the amount of premiums paid annually in successive years on an individual life insurance policy of the city treasurer by checks wrongfully drawn by the treasurer and payable to the defendant, where the receipt of the checks by the defendant shows actual notice of their invalidity, it is no defense to the action " that if the defendant should attempt to inquire into all checks ,which are received by it from the holders of policies for the payment of premiums, which are not issued in the name of the insured, it could not carry on its business, as such inquiry was a practical impossibility," and evidence offered to prove the truth of such a statement should be excluded.

In an action by a city against a life insurance company to recover the amount of premiums paid annually for six successive years on an individual life insurance policy of the city treasurer by checks of the city wrongfully drawn by the treasurer and payable to the defendant, the plaintiff on proving such knowingly wrongful receipts of its money shows a duty on the part of the defendant to return the amount of each payment as soon as made and without a demand by the plaintiff, and the plaintiff is entitled to interest from the date of each payment.

CONTRACT for money had and received to recover the amount of six checks of the city of Newburyport, the plaintiff, drawn without authority from the plaintiff's bank account by its treasurer and paid to the defendant in six successive years as premiums upon a life insurance policy of such treasurer, with interest thereon from the dates of the respective payments. Writ dated July 6, 1906.

In the Superior Court the case was heard by *Holmes,* J., without a jury, upon an agreed statement of facts and certain offers of evidence made by the defendant.   By the agreed facts it appeared that one Felker was the treasurer and the collector of taxes of the plaintiff from 1883 until some time in May, 1906.   For at least ten years the plaintiff has had a bank account in the First National Bank of Boston, and at the same time had an account in a Newburyport bank.   In the year 1900 this account was in the Ocean National Bank.   Since that year it has been in the First National Bank of Newburyport.   During this period the city has had no other bank accounts.   These bank accounts were established under the authority of the city, and the form of the checks likewise was adopted by the authority of the city.   The treasurer had authority to issue a check against one of these accounts to make a proper payment out of the city treasury, upon the written order of the mayor, as provided in the city

ordinance; which provided, among other things, as follows:
" Sec. 5. No money shall be drawn out of the city treasury,
except on the written order of the mayor, addressed to the
treasurer and countersigned by the city clerk."

The defendant is a mutual life insurance company formed
under the laws of the State of Pennsylvania and with its main
office in Philadelphia, Pennsylvania. It has an office for this
vicinity in Boston under the direction of a manager or general
agent. It does business strictly on the mutual plan for the
benefit of its policy holders alone. It has no stock or other
proprietary interests other than those of its policy holders, for
whose benefit it holds all its funds.

Felker had a life insurance policy in the defendant company,
the premiums thereon falling due annually on July 18 in each
year. The plaintiff had no interest in this policy, which was
entirely a personal matter of Felker. The six premiums falling
due from July 18, 1900, to July 18, 1905, inclusive, Felker paid
by means of checks drawn upon one of the bank accounts of the
plaintiff payable in each instance to " F. M. White, Cashier."
These checks were mailed by Felker as the different premiums
became due to the Boston office of the defendant, without any
statement or comment.

F. M. White has been during the past eight years the cashier
of the defendant at its Boston office, and she received the checks,
indorsed them and deposited them to the credit of the defendant
as she did all checks received in the course of business. They
were collected in due course. No officer of the defendant nor
any person connected with it outside of the Boston office ever
saw these checks. They were received in the mail at that office
in the same manner as many other checks which are received
daily in payment of premiums upon life insurance policies.
They were deposited with the other checks which were received
in the usual course of business. The agents of the defendant
gave no thought to the general transaction further than to get
the amount due it for premiums. During these years an aver-
age of about one hundred checks a week was received in the
Boston office of the defendant in payment of premiums.

Felker's salary as treasurer and collector of taxes of the plain-
tiff was $1,850 per annum, which was drawn by him monthly

in cash, and always was entered upon the city's books. The amount of this salary was unknown to the defendant, but it did know, however, that he was the treasurer of the plaintiff. The defendant did not make any investigation as to Felker's right to pay the premiums upon this policy in the manner in which he did.

So far as it may be material to the issues of this case and subject to the defendant's objection and right of exception, it is likewise agreed as follows :

In May, 1906, it was discovered by the mayor and city auditor of Newburyport that Felker was a defaulter to the extent of $86,800, having embezzled that sum from the city during the preceding seven or eight years. His method had been to use the city's money for the payment of his personal debts or for purposes of private investment, either by means of checks on the city's bank account or by abstracting cash from the drawer in his office. Just before the time of the annual auditing of his books in each year by the city auditor, he borrowed money on a city note or notes, fraudulently issued by him, and applied the money so raised to covering up the deficiency in his cash as city treasurer. These notes purported to be issued in anticipation of taxes and were similar in all respects to the legitimate notes frequently issued by the city. The fraudulent notes formed a long series steadily increasing in amount, all of which have been paid in due course except the last notes in the series, which were five in number, aggregating $80,000, and which were issued in April, 1906. As each fraudulent note fell due it was paid by Felker from the proceeds of a new note, or notes, which were made large enough to cover also the amount of his embezzlement since the date of the previous note.

One Sheffield, the manager of the Boston office of the defendant, testified that he knew that Felker was the treasurer of the plaintiff. He further testified that Felker paid the premiums on his insurance policy through the Boston office of the company by the checks in question. He was permitted to testify *de bene*, subject to such ruling as the judge might make as to the effect of the testimony, that he never received any communication from anybody connected with the city of Newburyport, either the mayor or the auditor or anybody, or from

anybody outside of the city of Newburyport, to the effect that Felker was using the funds of the city of Newburyport to pay the premiums on his policy; that he had never had called to his attention the ordinances of the city of Newburyport; that he did not know that a payment made by the treasurer out of the city treasury should be authorized by the mayor before it was paid; that he did not know that the mayor of the city of Newburyport did not approve the issuance of the checks referred to in the agreed facts.   He testified that all the checks in question were received by the cashier and were deposited to the credit of the company.   On cross-examination he testified that he could not say whether or not he saw these checks at the time they were received by his office.

The defendant offered to prove through this witness that it was very common in the course of the defendant's business for it to receive checks in payment of premiums drawn on funds not belonging to the persons making the payments, as, for example, checks from agents on the account of their principals, checks from bank cashiers on the funds of the bank, or checks from corporation treasurers on the funds of the corporation.

It further offered to show that if the defendant should attempt to inquire into all checks which are received by it from the holders of policies for the payment of premiums, which are not issued in the name of the assured, it could not carry on its business, as such inquiry was a practical impossibility.

It further offered to show that all the funds received by it from Felker by means of the checks referred to in the agreed facts had been paid out by the defendant to policy holders holding policies of the same class as that issued to Felker as death claims and otherwise, and that it held in its hands no moneys or reserve fund of any sort against this policy issued to Felker.

The judge excluded the evidence offered in each of the above offers of proof.

Florence M. White, called by the defendant, testified that she was the defendant's cashier, and had been since 1898; that she knew who Felker was, but never saw him; that she knew he was the treasurer of the city of Newburyport; that she never had any trouble about the checks in question; that they went through the banks in the ordinary course of business; that no

notice ever came to her in any way that Felker was using the funds of the plaintiff improperly, or that the checks were not authorized by the city government of the plaintiff.

On cross-examination she testified that in the ordinary course of business a check which came payable to her order would be indorsed by her, and deposited, without any other officer or agent of the company seeing the check; that, so far as she knew, that is what happened with the checks in question; that she indorsed them and gave them to an office boy or somebody to deposit; that, so far as she knew, nobody else saw the checks except her; that she remembered these particular checks, and thought she remembered observing at the time that they were drawn on the city's account.

At the close of the evidence the defendant asked the judge to find and to rule as follows:

1. Upon all the evidence the plaintiff is not entitled to recover.

2. Upon all the evidence the plaintiff is not entitled to recover the amount of the checks presented in evidence.

3. If the plaintiff is entitled to recover the amount of these checks, it is only entitled to recover interest thereon from the date of the writ.

4. Felker had the general power or authority to issue checks upon the funds deposited in the banks upon which these checks were drawn to make a proper payment out of the city treasury or for a debt of the city. [This finding was made by the judge.]

5. The evidence shows that the defendant took each of these checks in good faith, and it is not, therefore, chargeable with notice of any defect in Felker's authority to drawn any of these particular checks.

6. The form of these checks offered in evidence did not as a matter of law, put the defendant upon its inquiry as to Felker's authority to issue them, and did not actually or constructively charge the defendant with any notice whatsoever of any misuse of the checks by Felker.

7. Even if, at any time, the defendant was chargeable with notice of the misuse of these checks by Felker, or even if the plaintiff could at any time have recovered the amount of any

one of them from the defendant, the plaintiff has, by the acts, conduct and negligence of its duly authorized officers and agents, ratified the issuing of all of these checks by Felker, and is estopped to recover the amount of any of them from the defendant.

8. The defendant is a mutual life insurance company, and held all the money which it received from Felker by means of these checks in trust for all of its policy holders having policies of the same class as Felker's policy. All this money it paid out in death claims to such policy holders without knowledge of the plaintiff's claim, and, therefore, as it cannot be put *in statu quo*, it cannot be required to pay back the money to the plaintiff.

9. There were no funds of the plaintiff in the hands of the defendant at the time it received notice that the plaintiff claimed the proceeds of these checks. It cannot, therefore, be adjudged a constructive trustee for the plaintiff of any funds whatsoever, and cannot be held liable in this action.

10. The equity of the policy holders of the defendant to the funds sought to be recovered by the plaintiff in this action is superior to the equity of the plaintiff corporation, and the plaintiff cannot, therefore, recover.

The judge granted the fourth request of the defendant, but declined to make the other findings and rulings requested.

The judge found for the plaintiff in the sum of $868.63, being the amount set forth in the declaration, together with interest on each item from the date when it was paid. The defendant alleged exceptions, which, after the death of *Holmes,* J., were allowed, with the consent of the counsel for the plaintiff, by *De Courcy,* J., under R. L. c. 173, § 108.

*W. I. Badger & W. H. Hitchcock,* for the defendant.

*R. G. Dodge & C. W. Blood,* for the plaintiff, were not called upon.

HAMMOND, J. The checks were on their face the checks of the plaintiff, a municipal corporation. *Carpenter* v. *Farnsworth,* 106 Mass. 561. The defendant therefore must be held to have known this; and it knew further that they were delivered to the defendant in payment of the individual debt of the treasurer. In short, the defendant knew that it was receiving in payment of the individual debt of the treasurer checks of the municipal

corporation, and therefore that upon the face of the transaction the treasurer was using the funds of the city to pay his own debt.   No citation of authorities is needed in support of the proposition that in the absence of proof of authority on the part of the treasurer such a check is invalid.   The payee is charged with notice of a possible want of authority on the part of the agent or officer to bind the principal, and cannot recover upon the check or retain the proceeds without showing that the execution of the paper was duly authorized.   And this would be so irrespective of the question whether or not there was an ordinance prohibiting such an act.   If there had been no such ordinance the principle would have been applicable.   *Prima facie* and on its face the check is issued without authority.

Although it was not made payable to the defendant, yet it was received by a duly authorized agent of the defendant, in payment of a debt due to it, and the proceeds were duly credited to its account; and its right to hold the proceeds is based only upon the ratification of the act of its agent.   Under these circumstances the knowledge of its agent is the knowledge of the defendant, and no help for the defendant is found in R. L. c. 73, § 73.   There is nothing in *Fillebrown* v. *Hayward*, 190 Mass. 472, relied upon by the defendant, which is inconsistent with this view of the law.   Not to mention other material distinctions between that case and this, it is to be remembered that here we are dealing with the acts of a treasurer of a city, who under our law has no authority as such to issue commercial paper. *Abbott* v. *North Andover*, 145 Mass. 484.   Compare also *Merchants' National Bank* v. *Citizens' Gas Light Co.* 159 Mass. 505.

There does not appear to have been any ratification on the part of the plaintiff.   The facts were not known.   The negligence of the auditing officers of the plaintiff, if any there was, is not available as a defense to the defendant.

It is strongly argued by the defendant that before this action was brought it had distributed the money among its policy holders, so that it has now no fund on hand to meet this demand.   But the answer is that it took the money with full knowledge of the very infirmity in its title upon which the plaintiff bases the right to recover.   It must be held to have paid over at its own risk.   In law it held the money for the

plaintiff, and it cannot relieve itself from responsibility by a division of it among its policy holders.

From the above considerations it follows that as to all the requests for rulings, so far as they respect the question of liability, no error appears in the action of the trial court.

The defendant excepted to the exclusion of certain evidence offered by it. The first offer was properly excluded. The evidence was offered as bearing upon the question of constructive notice. But it could not affect the question of actual notice in this case and was immaterial. The exception arising upon the second offer was waived.

As to the third offer, which was to prove that " if the defendant should attempt to inquire into all checks which are received by it from the holder of policies for the payment of premiums which are not issued in the name of the assured, it could not carry on its business, as such inquiry was a practical impossibility," the answer would seem to be that, if the defendant cannot carry on its business under the general laws of the land without risk, it had better conclude, not that the law is to be changed for its particular benefit, but that it must either assume the risks or stop the business.

The subject contained in the fourth offer has been covered, and no further comment need be made on it. The judge properly excluded all the evidence contained in the four offers.

There remains the question of interest. The defendant received the money of the plaintiff in payment of the individual debt of the treasurer. It knew this. Such a reception of the money was a fraud upon the plaintiff. The money was wrongfully received, and with notice of the defect in the title. It was the duty of the defendant to return it where it belonged, and that without a demand by the plaintiff. Under these circumstances interest should be charged from the time when the money was received. *Dodge* v. *Perkins*, 9 Pick. 368, and cases there cited. *Atlantic National Bank* v. *Harris*, 118 Mass. 147. *Wood* v. *Robbins*, 11 Mass. 504. *Gale* v. *Chase National Bank*, 104 Fed. Rep. 214. *Reynolds Elevator Co.* v. *Merchants National Bank*, 55 App. Div. (N. Y.) 1. *Rogers* v. *Betterton*, 93 Tenn. 630.

*Exceptions overruled.*