CHILDS, JEFFRIES & CO., INCORPORATED, *vs.* WILLIAM
ELLERY BRIGHT & others.

Suffolk.    December 9, 1932. — June 26, 1933.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Corporation*, Officers and agents, Checks.  *Agency*, Scope of authority,
Ratification.  *Sale*, What constitutes.  *Bona Fide Purchaser.  Bills
and Notes*, Check, Holder in due course.  *Contract*, Implied.  *Estoppel.*

A conclusion, that the treasurer of a corporation organized to deal in
securities, who had authority under a vote of the directors to "draw
checks" "for and in behalf of the corporation," had no authority to
sign and use its checks to pay a part of his private debt to another
stockbroker, with whom he had a trading account, was not incon-
sistent with subsidiary findings that the treasurer had authority to
buy or sell securities in the name of the corporation for his own trad-
ing account with it as well as for the accounts of its customers, that
he was authorized to buy or sell securities for the account of the cor-
poration and that he would have had authority to put through for
a customer of the corporation who also had a trading account with
the other stockbroker the identical transaction which he in fact put
through on his own behalf.

Other transactions between the treasurer and the stockbroker above
mentioned, whereby the treasurer delivered shares of stock owned by
the corporation to the stockbroker, "charging the account" of the
treasurer with him, and the stockbroker issued checks accordingly
to the corporation, did not militate against the conclusion above
described, such other transactions being different from a transaction
consisting of payment of a part of the treasurer's private debt to
the stockbroker by use of the corporation's check.

The treasurer above mentioned, having been requested by the stock-
broker to "lighten his account," signed and delivered to the stock-
broker a check of the corporation payable to the stockbroker, with
instructions to "credit [the amount of the check] to my account" and
to deliver to the corporation certain shares of stock.  This trans-
action was carried out.  *Held*, that there was no merit in a contention
by the stockbroker that the transaction was a purchase of the stock
by the corporation, for which purpose the treasurer would have actual
or ostensible authority to draw the check: it was apparent that
the transaction was intended by the treasurer and the stockbroker
to be a payment on account of the treasurer's personal debt to the

stockbroker and a partial release of securities held by the stockbroker to secure that debt.

No inference against the corporation on the issue of the treasurer's authority so to use its money could be drawn from the fact that he previously had effected a similar transaction with the stockbroker, the corporation not having had knowledge of the previous transaction until after the transaction in question; nor could it be said that the corporation had held him out as authorized to conduct the transaction in question.

It appeared that the stockbroker took the check above described without making any inquiry as to the treasurer's authority to give it and upon the assumption that the treasurer had some sort of arrangement with the corporation whereby he was authorized to issue the check; and that the then market value of the stock delivered to the corporation was substantially less than the amount of the check. *Held*, that the stockbroker was not a *bona fide* purchaser of the check: irrespective of his good faith, he was put on inquiry as to the authority of the treasurer to give the check.

The failure of the corporation to notify the stockbroker of the treasurer's lack of authority to give the check above described until more than four months after it was given and more than three months after the other officers of the corporation had learned about it, where it did not appear that the stockbroker was prejudiced by such delay, did not estop the corporation thereafter to seek a repayment of its amount by the stockbroker.

A vote of the directors of the corporation above mentioned, passed immediately after the giving of the check had come to the knowledge of the other officers and rescinding their previous vote as to the signing of checks "without in any way invalidating any signature heretofore made thereunder," as a matter of law did not constitute a ratification of the treasurer's act of signing and giving the check: the quoted portion of the vote was applicable only to signatures made under the authority of the previous vote.

The stock delivered by the stockbroker to the corporation in return for the check above described was placed by the treasurer in the possession of the corporation as collateral for his indebtedness to it for the amount of the check. The corporation sold the stock about five months after the giving of the check had been discovered, and credited the treasurer's account with it with the amount of the proceeds of the sale. *Held*, that

(1) The retention of the stock by the corporation did not constitute as a matter of law a ratification by it of the giving of the check;

(2) The corporation would not be bound to return the stock to the stockbroker as a condition precedent to its seeking a repayment by him of the amount of the check: in seeking such repayment the corporation would not be rescinding any contract between it and the stockbroker.

In the circumstances above described, the corporation in justice and equity was bound to account for the value of the stock if it sought repayment of the check.

In an action by the corporation against the stockbroker in the circumstances above described, it was *held*, that the plaintiff was entitled to recover the amount of the check less the value of the stock on the date when the plaintiff's officers learned of the giving of the check.

CONTRACT.   Writ dated October 6, 1930.

In the Superior Court, the action was referred to an auditor and afterwards was heard by *Weed*, J., without a jury.   Material facts are stated in the opinion.   The judge found for the plaintiff in the sum of $14,904.80.   All parties alleged exceptions.

*S. H. Pillsbury*, (*S. H. Babcock* with him,) for the defendants.

*W. T. Snow*, for the plaintiff.

PIERCE, J.   This is an action of contract commenced by writ dated October 6, 1930.   The action is brought for the benefit of the Massachusetts Bonding and Insurance Company to recover the proceeds of a check for $24,000 of the plaintiff corporation alleged to have been improperly used by one of its officers for the purpose of paying an individual indebtedness to the defendants.   It is alleged that the defendants were not *bona fide* purchasers of the check. The declaration alleges in count 2 "that the defendants owe it the sum of $24,000 and interest for money had and received by defendants to the use of the plaintiff."   In their answer the defendants "admit that they received from the plaintiff a check for $24,000, but they deny each and every other allegation in the plaintiff's writ and declaration contained."   They further answer "that they delivered to the plaintiff certain securities, the purchase price and then market value of which was $24,000; that the plaintiff thereafter either retained or sold said securities for its own account, wherefore the plaintiff cannot recover herein." No claim of set-off or recoupment is made.

The case was referred to an auditor who filed his report on February 12, 1932, "and found for the plaintiff in the sum of $12,800, together with interest thereon from March 11, 1930."   Thereafter, the case was tried before a judge of the Superior Court, sitting without a jury, on the auditor's

report and additional evidence. The defendants excepted to the exclusion of certain evidence offered by them and the plaintiff excepted to the admission of certain evidence offered by the defendants. On June 15, 1932, the trial judge made a "Finding" which described the procedure that followed upon the filing of the auditor's report on February 12, 1932, as follows: "The plaintiff offered the auditor's report, the check of the plaintiff for $24,000 delivered to the defendants on October 25, 1929, and the stub from the plaintiff's check book describing said check. The defendants offered the testimony of the plaintiff's accountant in the year 1929 and of C. Lawrence Macurda, its treasurer during and prior to the transaction in issue; and the plaintiff's ledger card of the 'C. L. M. Special' account more particularly described in the auditor's report." The plaintiff submitted seasonably a "Motion to exclude findings of the auditor appearing in the auditor's report alleged to be based upon inadmissible evidence and erroneous opinions of law." The trial judge states: "I allow said motion with respect to findings of fact alleged therein to be based on inadmissible evidence, and deny it with respect to the findings therein alleged to be based on erroneous opinions of law." He denied a motion of the defendants, seasonably filed, to strike out portions of the auditor's report. The plaintiff excepted to the judge's denial of certain of its requests for rulings, and to the denial of its motion to strike out certain of the auditor's findings alleged to be based on erroneous opinions of law. The defendants excepted to the allowance of the plaintiff's motion as allowed; to the denial of their motion to strike out portions of the auditor's report; to certain findings of fact and rulings of law; to the giving of certain of the plaintiff's requests for rulings; and to the denial of certain of the defendants' requests for rulings.

The trial judge upon all the evidence, including the auditor's report as modified by the foregoing rulings, and the inferences of fact reasonably to be drawn therefrom, finds the basic and subsidiary facts found by the auditor to be true. The facts found by the auditor are in substance as

follows: The plaintiff is a corporation organized in 1925 for the purpose of dealing in securities. The incorporators were Paul Dudley Childs, J. Amory Jeffries and C. Lawrence Macurda. They subscribed for all the stock and became the first board of directors. In 1929, Childs was president, Jeffries, vice-president, and Macurda, treasurer, and all three were directors. At all times until October 25, 1929, the president, vice-president and the treasurer had authority "for and in behalf of the corporation to sign notes, drafts, bills, or to draw checks upon any and all bank accounts of said corporation or to make indorsements on the paper of the corporation or its clients." In 1928 and 1929, Macurda had three margin trading accounts with the plaintiff, one in the name of his wife, one in the name of his son, and one in his own name; these accounts were similar to the accounts of any other customer of the plaintiff. In October, 1929, Macurda was considerably indebted to the plaintiff on these accounts.

Various other officers, agents and employees of the plaintiff had trading accounts with said corporation. The accounts of the officers, agents and employees were kept on cards in the same way that accounts of outside customers were kept and were available for inspection by the officers of the corporation. All the officers knew that all the other officers had such trading accounts. Each of the officers was accustomed to give orders for the purchase and sale by the plaintiff of securities for his individual account and to sign the plaintiff's corporate checks for such purchases. There was no rule or regulation of the plaintiff corporation forbidding its officers or employees from buying or selling any security for his own account through the plaintiff corporation until after the transaction in suit. (This paragraph is a summary of matter which was struck out of the auditor's report by the judge upon motion of the plaintiff, and is a matter subject to the defendants' exceptions.)

About the first of October, 1929, Macurda was personally indebted to the defendants because of operations conducted with them through the medium of his trading account in their office, in approximately $80,000. For this indebted-

ness the defendants held, among other securities, fifteen hundred shares of Chain & General Equities common stock. Prior to October 4, 1929, one Jackson V. R. Bright, son of the defendant Bright, employed by the defendants as a "customer's man," on behalf of the defendants, made demands on Macurda to "lighten his account" with the defendants; as a result of these demands Macurda, on October 4, 1929, wrote the defendants as follows: "Please deliver today to Messrs. Childs, Jeffries & Company, the following stocks, namely: 100 shares Kroger Grocery 100 shares Safeway Stores 100 shares McLellan Stores and receive from them a check for $31,340.50, which please credit to my account." In consequence of the letter of October 4, 1929, the defendants on October 10, 1929, delivered to one of the employees in the "cage" at the plaintiff's office the securities mentioned in said letter, receiving a check of Childs, Jeffries & Co., Incorporated, signed by C. Lawrence Macurda as treasurer, in the sum of $31,340.50. This check was applied by the defendants to Macurda's personal indebtedness to them. On instructions from Macurda the amount of this check was charged to his personal trading account with the plaintiff and the stock was entered on this account as collateral. On October 24, 1929, Macurda wrote the defendants as follows: "Please deliver to Messrs. Childs, Jeffries & Co., 50 Congress Street, on Monday next, October 28th, 800 shares of Chain & General Common, against their check for $24,000, which please credit to my account." In consequence of this letter, on October 25, 1929, the defendants delivered to an employee of the plaintiff eight hundred shares of Chain & General Equities common stock which the defendants had held for Macurda's account with them, and received from an employee of the plaintiff a check to their order for $24,000 which had been previously drawn by a subordinate employee of the plaintiff on instructions from Macurda and signed by Macurda as treasurer of the plaintiff corporation. At the same time said employee executed a receipt on a form presented by the defendants reciting the receipt by the plaintiff "for C. Lawrence Macurda of 800 shares Chain

& General Equities Certificate No. C240/7." The proceeds of this check were credited to Macurda's personal indebtedness to the defendants, and the plaintiff is here seeking to recover the amount of said check.

Macurda caused a special account to be opened on a ledger card of Childs, Jeffries & Co., Incorporated, headed "C. L. Macurda, Special," to accommodate this one transaction. On his instructions this account was charged with the check for $24,000, and credited with the eight hundred shares of Chain & General Equities common as collateral. The only reason advanced by Macurda for carrying this transaction outside his regular account was that he intended to obtain a bank loan on the securities. He did not tell any of the other officers, directors or stockholders of the plaintiff corporation about this transaction and none of them had knowledge of it until December 5, 1929, when it first came to the knowledge of the other officers and directors of the plaintiff. The following day Childs and Jeffries consulted with their attorney. Macurda was called to the conference and told by the attorney that he had no right to issue the check for $24,000. On the same day a special directors' meeting was held and Macurda was compelled to resign as treasurer, clerk and director. At this meeting the authority of the president, vice-president and treasurer as to signing of notes, drafts, bills or checks conferred on them on August 31, 1925, was rescinded "without in any way invalidating any signature heretofore made thereunder" and a new vote was passed requiring two signatures upon corporate paper.

On October 28, 1929, Childs, Jeffries & Co., Incorporated, borrowed $30,000 from The New England Trust Company. It was the duty of one McVey, an employee of the plaintiff directly under Macurda's supervision, to deliver to banks collateral for loans made with them. Macurda asked McVey if the eight hundred shares of Chain & General common was collateral they could borrow on or use as a loan, and in consequence of this conversation McVey included this stock in the collateral sent to The New England Trust Company to secure the loan of $30,000 on October

28, 1929. These certificates remained with The New England Trust Company as collateral for the plaintiff's loan until March, 1931. On October 24, 1929, the plaintiff had available more than eight hundred shares of Chain & General Equities stock and as far as appears continued to have such stock after the transaction in suit.

Subject to the exception of the defendants the findings contained in this paragraph were struck from the auditor's report: Starting in April or May, 1929, monthly audits or reports were prepared by the employees of the plaintiff corporation, which contained a list of all the accounts of the officers and the balance of each account. These audits were furnished to the officers two or three weeks after the first of the month. On September 12, 1929, Macurda wrote the defendants as follows: "Please take down 1,000 shares of United Founders Corporation at 72⅛ from Messrs. Childs, Jeffries & Co. in the amount of $72,125, charging the account of Frank M. Pierce and C. Lawrence Macurda, joint account." On September 25, 1929, two similar letters were sent by Macurda to the defendants differing only in amount and kind of stock, and account charged. Pursuant to these instructions the defendants in each case issued and delivered to the plaintiff checks, and received from the plaintiff the securities mentioned in the letters of Macurda. The auditor found that none of these three transactions nor the one of October 4, 1929, hereinbefore mentioned, had been questioned, complained of or objected to in any way or at any time by the plaintiff prior to the transaction of October 24, 1929, or up to the date of the writ in this suit. He specifically found as to these transactions that they were within the scope of Macurda's express or implied authority and that it is therefore unnecessary to determine whether any other officer of the plaintiff had notice of them.

There is no evidence that the plaintiff took any action or made any claim with respect to the transaction in suit until February 13, 1930. On this date claim was made for $24,000 on the Massachusetts Bonding and Insurance Company on a fidelity bond. On receipt of this claim the

bonding company made an exhaustive investigation and on March 11, 1930, the matter was first brought to the attention of the defendants.   On May 19, 1930, the plaintiff corporation made a written assignment of its claim to the bonding company, and on May 20, 1930, credited the account of "C. Lawrence Macurda, Special" with $7,108 as the proceeds of the sale of eight hundred shares Chain & General Equities common stock.   The eight hundred shares thus sold were not the identical certificates delivered by the defendants on October 24, 1929, as those certificates were still with The New England Trust Company, but were other shares owned by the plaintiff.   On August 1, 1930, written demand upon the defendants for repayment of the $24,000 check was made by attorneys for the Massachusetts Bonding and Insurance Company.   The auditor found that the value of Chain & General Equities common stock, sold in eight hundred share lots, was on "October 24, 1929   $25 per share," on "October 25, 1929   $22 per share," on "December 5, 1929   $14 per share," and on "May 20, 1930   $9 per share"; that December 5, 1929, the day on which the Macurda transaction first came to the notice of the officers, directors or stockholders of the plaintiff, was the material date; and that the plaintiff should be charged with $11,200 as the value of eight hundred shares as collateral on that date.   He found that the defendants were liable for the amount of the check for $24,000, on the ground that Macurda had no express or implied authority to make the transaction, which was such as to put the defendants upon inquiry as to Macurda's authority; that the defendants had constructive notice of all that such inquiry would reveal; that an inquiry would have revealed Macurda's lack of authority; and that no inquiry was made.   He found upon all the evidence that there never was any agreement between the plaintiff and Macurda or between the plaintiff and the defendants to ratify or confirm Macurda's delivery of the plaintiff's check for $24,000 to the defendants in partial satisfaction of Macurda's individual indebtedness.   He finds as to the transaction of October 4, 1929, which was not consummated until October

10, 1929, that no officer, director or stockholder other than Macurda had notice of this transaction before the transaction of October 24, 1929, and therefore there was no estoppel of the plaintiff to deny Macurda's authority to issue the check of October 25, 1929, predicated upon its failure to question or complain of the transaction of October 4, 1929; that the defendants' acceptance of checks for such large amounts as were involved in the transactions of October 4, 1929, and October 24, 1929, without any inquiry from other officers of the plaintiff, was not actual bad faith on the part of the defendants but was based upon their assumption without inquiry that Macurda had some sort of arrangement with the plaintiff whereby he was authorized to issue the plaintiff's checks in these transactions. The auditor found for the plaintiff in the sum of $12,800 with interest thereon from March 11, 1930, the date of demand upon the defendants.

The judge found that the plaintiff is entitled to receive $24,000 with interest from the date when this sum was misappropriated, to wit, October 25, 1929; that there should be deducted therefrom the benefit that enured to it by the retention of the said eight hundred shares after it first learned of the unauthorized transaction on December 5, 1929, and that the measure of such benefit is the fair market value of said shares on December 5, 1929, with interest. The plaintiff filed thirty requests for rulings, the defendants sixty-four. The trial judge gave a few of these requests and denied the others. He also gave the general ruling that "upon all the evidence the plaintiff is entitled to a finding in its favor." The case is before this court on a joint bill of exceptions filed by the plaintiff and the defendants, and the bill of exceptions contains "all the facts and all the evidence necessary for the determination of the questions of law raised by this bill of exceptions." The principal issues in controversy are (1) Did Macurda have authority express or implied to sign the check in question? (2) If not, were the defendants put upon inquiry as to Macurda's authority? (3) Is the plain-

tiff estopped to deny Macurda's authority? and (4) Did the plaintiff ratify the transaction?

1. Under the vote of August 31, 1925, the "treasurer, Macurda had authority 'for and in behalf of the corporation to sign notes, drafts, bills, or to draw checks . . .,'" but the finding of the auditor and the judge that Macurda did not have express or implied authority to use the funds of the plaintiff to pay a part of his private debt to the defendants is a finding of fact which is settled adversely to the defendants who assert the authority if there is any evidence to support it. *Adams* v. *Hayden,* 236 Mass. 454, 457. *Moss* v. *Old Colony Trust Co.* 246 Mass. 139, 143. *Peabody* v. *Dymsza,* 280 Mass. 341. The subsidiary facts found are not in conflict with the general finding. Macurda had authority to draw checks "for and in behalf of the corporation." He had authority to buy or sell securities in the name of the plaintiff for his own trading account with the plaintiff as well as for the accounts of customers; he was authorized to buy or sell securities for the account of the plaintiff, and he would have had authority to put through for a customer of the plaintiff corporation who also had a margin account with the defendants the identical transaction which he in fact put through on his own behalf. None of these subsidiary findings is inconsistent with the findings that Macurda was not authorized to sign the check in question. The three September transactions which were struck out of the auditor's report do not aid the defendants, they were so different (in fact the exact opposite) from the transaction in question, that they were without evidentiary value. The defendants contend that the transaction in suit constituted a purchase of the eight hundred shares of Chain & General Equities common stock by the plaintiff from the defendants and that for this purpose Macurda had actual or ostensible authority to draw the check. This contention is based upon evidence for the defendants which the auditor or judge might disbelieve that the securities in question were a part of fifteen hundred shares purchased by the defendants on the order of

Macurda and were being carried on Macurda's account on October 25, 1929. This contention rests upon the assumption that the defendants had title to the shares in question and that they were not pledged by Macurda to the defendants. *Hall* v. *Paine*, 224 Mass. 62, 72–73. On the finding it is clear that the transaction was intended by Macurda and the defendants to be a payment on account of Macurda's personal debt to the defendants, and a partial release of securities held by the defendants to secure that debt, and it was not intended by the defendants that securities should be sold by the defendants to the plaintiff. Manifestly on the findings no express or implied authority was ever conferred on any officer to deal with the plaintiff's money as it was here used. It is to be noted that the plaintiff had no notice of the similar transaction on October 4, 1929, until after the transaction of October 24, 1929; therefore no inference against the plaintiff can be drawn from the fact that Macurda had a similar transaction with the defendants before that of October 24, 1929. *Temple* v. *Pomroy*, 4 Gray, 128.

2. If Macurda had neither express nor implied authority to sign the check for the purpose for which it was given and received were the defendants *bona fide* purchasers of the check? They made in fact no inquiries and were found by the auditor to have assumed, without inquiry, that Macurda had some sort of arrangement with the plaintiff whereby he was authorized to issue the checks of October 10 and October 25, 1929. It is well settled law that where an officer of a corporation pays his private debt with a check drawn on the account of the corporation the creditor is put on inquiry as to the authority of the officer so to do. *Johnson & Kettell Co.* v. *Longley Luncheon Co.* 207 Mass. 52, 56. *Farrington* v. *South Boston Railroad*, 150 Mass. 406. *Newburyport* v. *Fidelity Mutual Life Ins. Co.* 197 Mass. 596. It is to be noted that the market value of the eight hundred shares of stock on October 24, 1929, when the order was given the defendants was $4,000 less than the check, and on October 25, 1929, when the transaction was consummated, it was $6,400 less. Upon the facts

found the defendants took with notice given on the face of the check, and their rights and obligations depend not upon their good or bad faith but upon the transaction being or not being one with the plaintiff. *Johnson & Kettell Co.* v. *Longley Luncheon Co.* 207 Mass. 52, 56, distinguishes cases where the check is drawn payable to the treasurer or a third person and is indorsed by the payee.

3. On the facts found Macurda had not been held out as authorized to conduct the transaction. The transaction of October 4, consummated October 10, 1929, was not known to any officer of the corporation or stockholder before the transaction of October 24, 1929, had occurred. See *DiLorenzo* v. *Atlantic National Bank of Boston*, 278 Mass. 321, 325. The conduct of the plaintiff in failing to give notice to the defendants of Macurda's lack of authority until March 11, 1930, does not work an estoppel because there is no evidence that the defendants were prejudiced by the delay; and "Without showing some injury by reason of the delay, the defendant cannot use it as an estoppel against the plaintiff." *Murphy* v. *Metropolitan National Bank,* 191 Mass. 159, 165. *DiLorenzo* v. *Atlantic National Bank of Boston*, 278 Mass. 321, 325.

4. The defendants contend that the vote of the directors of the plaintiff corporation on December 6, 1929, was an express ratification of the transaction. On that date Macurda resigned, the remaining directors accepted his resignation, and at this meeting the vote of August 31, 1925, as to signing checks was rescinded, "without in any way invalidating any signature heretofore made thereunder," and a new vote was passed requiring two signatures upon corporate paper. The auditor found that the plaintiff never intended to ratify the act of Macurda, and the judge ruled that the vote of December 6 did not amount to a ratification. Apart from the finding of fact we think the ruling was right and that vote confirmed only the signatures made under the authority of the vote of August 31, 1925, which in terms limited the authority of the named officers to the signing of checks "for and in behalf of the corporation." The defendants contend that the retention of the stock by

the plaintiff amounted to a ratification as matter of law. Silence is merely evidence of ratification from which an inference may be drawn by the fact-finding body; it is not commonly a ratification as matter of law. *Philadelphia, Wilmington, & Baltimore Railroad* v. *Cowell,* 28 Penn. St. 329. We think the right of the plaintiff to recover the value of the check for $24,000 is not to be measured by rules of law applicable to a rescission of a contract between the defendants and plaintiff. The obligation of the plaintiff to return the stock received by Macurda for his own gain does not result from any rule that rescission requires restoration of property or consideration from the defendant, but rests upon the principle that he who would receive equity must do equity. The principle to be here applied gives the plaintiff the right to recover $24,000, with interest from the time of the unauthorized payment by Macurda of the plaintiff's money to the defendant, that is, from October 25, 1929. *Newburyport* v. *Fidelity Mutual Life Ins. Co.* 197 Mass. 596, 604, and cases cited. See also *Franklin Savings Bank* v. *International Trust Co.* 215 Mass. 231; *Dodge* v. *Perkins,* 9 Pick. 368, 384, 387; *Earle* v. *Whiting,* 196 Mass. 371, 372; *Manufacturers' National Bank* v. *Perry,* 144 Mass. 313, 314; *Ratner* v. *Hill,* 270 Mass. 249, 253, 254. The plaintiff, however, is bound to account for eight hundred shares given Macurda as of December 5, 1929, when the plaintiff first learned of the transaction, with interest.

*Exceptions of plaintiff and defendants overruled.*