WILLIAM H. GRUEBY, administrator, vs. CHASE HARRIS
FORBES CORPORATION.

Suffolk.    May 15, 27, 1935. — September 16, 1935.

Present: FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Sale*, Of securities, Rescission.    *Sale of Securities Act.    Tender.    Executor
and Administrator.    Tax*, Excise.

Under G. L. (Ter. Ed.) c. 110A, § 5, notice of intention to offer one
security for sale was not shown by mere references to it as offered or sold
in a notice and a statement filed with the department of public utilities
to qualify another security.
After one purporting to act as an administrator had purchased bonds
sold without there having been filed the notice of intention to offer
them for sale required by G. L. (Ter. Ed.) c. 110A, § 5, a tender of
the bonds by him to the seller for the purpose of rescinding the pur-
chase was not made ineffective by the facts that the bonds had been
distributed to himself and another as the next of kin and that the
tender was made by him individually and as agent for the other next
of kin; nor was an action by him to recover the purchase price barred
though he described himself as administrator therein.
Such tender was good though it did not include the interest received by
the purchaser on the bonds if he then offered to credit such interest
against a larger amount of interest coming due him from the seller on
the purchase price by reason of the tender.
Under the Federal legislation in force in 1933, the time of such tender,
it was not made ineffective by the purchaser's failure to affix to the
bonds or to tender with them Federal transfer tax stamps.

CONTRACT.    Writ dated August 7, 1933.

The action was heard in the Superior Court without a jury
by *Donnelly, J.,* who found for the plaintiff in the sum of
$13,932.83.    The defendant alleged exceptions.

Among other facts, it appeared that on July 24, 1933, the
plaintiff tendered to the defendant the bonds mentioned in
the opinion and demanded $10,721.92, which was $10,152.78,
the purchase price of the bonds, plus $3,044.14, interest
thereon from the date of the purchase to July 24, 1933, a
total of $13,196.92, less $2,475, the interest received on the
bonds during that period.

*C. B. Rugg,* (*W. F. Farr* with him,) for the defendant.

*J. W. Vaughan,* (*A. Brown* with him,) for the plaintiff.

*J. A. Locke,* by leave of court, submitted a brief as *amicus curiae.*

QUA, J.   This is an action of contract to recover the price paid by the plaintiff to the defendant for ten $1,000 "5½% First Mortgage Sinking Fund Gold Bonds" of National Press Building Corporation which the plaintiff purchased from the defendant on July 25, 1928.

The grounds on which the action is based are that the sale was illegal for the reason that no notice of intention to offer the bonds for sale had been filed with the department of public utilities as required by the sale of securities act, G. L. c. 110A, § 5, and that after the plaintiff discovered this violation of law, he rescinded the sale by tendering back to the defendant the bonds which he had bought. *Kneeland* v. *Emerton,* 280 Mass. 371.   After a finding by the judge for the plaintiff, the case is here on the defendant's exceptions to the granting of certain rulings requested by the plaintiff, to the refusal of certain rulings requested by the defendant and to the finding for the plaintiff.

The defendant's first contention is that notice of intention to offer for sale had been filed in compliance with the statute.   On April 14, 1928, Faxon, Gade & Co., Inc., a registered broker, wrote a letter to the department enclosing a formal notice of intention to offer for sale an issue of "General Mortgage 6½% Bonds of the National Press Building Corporation."   This was an issue of the same corporation junior to the five and one half per cent first mortgage sinking fund gold bonds which the plaintiff bought in July, 1928.   This letter contained the following references to the first mortgage issue:

"In connection with the enclosed notice, this offering of General Mortgage 6½% Bonds followed the offering of First Mortgage 5½% Bonds of this same Corporation, which was made by Harris, Forbes & Co. and ourselves on Tuesday.

"Will you advise if it is necessary for us to procure from

the Company a separate supplemental statement covering this General Mortgage issue, or whether the information already filed by Harris, Forbes & Co. in connection with the First Mortgage issue is sufficient for your records."

This was not a notice of intention to offer for sale the first mortgage bonds. The letter and the enclosure were plainly intended as a notice with respect to the second issue and not with respect to the first. The purpose of the statute in requiring the notice of intention to offer for sale is to call the department's attention to the fact that a new security is about to be offered, so that the department may investigate and, if it sees fit, forbid the sale under the provisions of §§ 5 and 6. The letter and the enclosure were adequate to this end as to the second issue, but not as to the first. An officer or clerk of the department examining the letter and the enclosure would find his attention directed to the second issue and not to the first. If he read the letter carefully, he would infer that a first issue had been offered "on Tuesday" and he might surmise that the offer continued, but he would also be entitled to infer that such offer had been made lawfully, after notice to the department and that the department had already taken cognizance of the matter. He could not be held bound to remember that there had been no notice of the first issue or to make search for the purpose of ascertaining that fact. The detailed statement filed May 9 in connection with the second issue was not notice of intention to offer for sale the first issue. Although it mentions first mortgage bonds as constituting part of the funded debt of the corporation, it refers to the bonds as "Sold." In the context in which this word is used it cannot be construed as the equivalent of "to be sold." Moreover, the statute requires a clear and unequivocal declaration of intent to offer for sale "the security named and specified in the notice." Such casual references as these, occurring in documents prepared for the purpose of qualifying an entirely separate and distinct issue, are not enough. *Kenady* v. *Lawrence,* 128 Mass. 318. *McNulty* v. *Cambridge,* 130 Mass. 275. *Miles* v. *Lynn,* 130 Mass. 398. *Driscoll* v. *Fall River,* 163 Mass. 105, 107.

*Sweet* v. *Pecker*, 223 Mass. 286. *Bychower* v. *United Cigar Stores Co.* 253 Mass. 542. *Rankin* v. *Wordell & McGuire Co.* 254 Mass. 109.

But before a purchaser can maintain an action at law to recover the price paid for securities sold in violation of the statute he must make a proper tender which, if accepted, would restore to the seller the securities themselves and all dividends or interest which the purchaser has received therefrom. *Kneeland* v. *Emerton*, 280 Mass. 371, 378. *Bauer* v. *Bond & Goodwin Inc.* 285 Mass. 117, 118. *Cummings* v. *Hotchkin Co., ante,* 78. We proceed to consider separately the several objections of the defendant to the tender which the plaintiff made of the identical bonds purchased:

(1) The plaintiff is described in this action as administrator of the estate of Edward L. Grueby. The original purchase of the bonds, which the plaintiff has sought to rescind, was made by the plaintiff himself in his capacity as administrator and not by the intestate before his death. After the purchase and before the tender, the plaintiff distributed five of the bonds to his sister, Mrs. Bates, and the other five to himself, he and his sister being the only persons interested in the estate. The judge has found that the tender was made by the plaintiff and Mrs. Bates in their individual capacities. It was proper for the plaintiff to make the tender in his individual capacity, because in law he is deemed to have made the original purchase in his individual capacity, even though he may have described himself as administrator and may have been accountable to the Probate Court with respect to the transaction. "The general rule is, that an executor can make no contract which shall bind the estate of his testator by a new promise." *Kingman* v. *Soule*, 132 Mass. 285, 288. The contract binds him personally. *Durkin* v. *Langley*, 167 Mass. 577. *Eaton* v. *Walker*, 244 Mass. 23, 30. *Tomlinson* v. *Flanagan*, 287 Mass. 38, 44–45. It has not been argued, and we think could not be argued successfully, that the effect of the tender was in any way weakened because the plaintiff's sister, the sole other distributee of the estate,

joined therein through the plaintiff as her agent. He had in hand and tendered her bonds as well as his own. The defendant cannot now argue that there was no evidence of the plaintiff's authority from Mrs. Bates to deliver her bonds, as the judge at the request of the defendant granted the finding numbered 14, wherein the tender is described as "by William H. Grueby and Minnie G. Bates." Nor is the fact that the plaintiff in the present action has described himself as administrator any bar to recovery, as it is settled that where one is in fact administrator and is accountable as such with respect to the subject matter of the action he may, if he desires, use that designation in bringing suit, although the obligation on which the action is based accrued after the death of his intestate. *Mowry* v. *Adams,* 14 Mass. 327. *Talmage* v. *Chapel,* 16 Mass. 71. *Sheldon* v. *Smith,* 97 Mass. 34. *Kent* v. *Bothwell,* 152 Mass. 341.

(2) We think that under the particular circumstances of this case, the plaintiff was not obliged to tender with the bonds in cash the sum which had been received as interest on them after the plaintiff purchased them and before he tendered them back to the defendant. As soon as the tender of the bonds was made, and as a result of it, an obligation arose on the part of the defendant to repay to the plaintiff, not only the original purchase price, but also interest on it from the date of purchase as on money wrongfully obtained. *Kneeland* v. *Emerton,* 280 Mass. 371. *Earle* v. *Whiting,* 196 Mass. 371, 372. *Newburyport* v. *Fidelity Mutual Life Ins. Co.* 197 Mass. 596, 604. *Hansen* v. *Allen,* 117 Wis. 61, 66. It would be vain to require the plaintiff to tender money to the defendant, when immediately, by virtue of the tender, a much larger sum would become due from the defendant to the plaintiff. *Montgomery* v. *Pickering,* 116 Mass. 227, 231. *Brocklehurst & Potter Co.* v. *Marsch,* 225 Mass. 3, 10. *Mead* v. *Welch,* 67 N. H. 341. *Billings* v. *Aspen Mining & Smelting Co.* 51 Fed. Rep. 338, 349. The plaintiff did, at the time of tender, express his willingness to allow the interest received on the bonds as a credit in reduction of the sum due him

from the defendant. This was enough. It is not as if he had tried to make his tender conditional upon the set-off of an existing but unrelated debt.

(3) We think the plaintiff's tender was not vitiated by his failure to stamp the bonds or to tender with them the necessary stamps to pay the tax imposed by Act of June 6, 1932, c. 209, § 724, 47 U. S. Sts. at Large, 274, amending Schedule A of Title VIII of the Revenue Act of 1926, upon "all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to" corporate bonds. The defendant contends that it could not have accepted the tender without incurring a penalty for accepting an unstamped instrument under the revenue act of February 26, 1926, c. 27, § 802, 44 U. S. Sts. at Large, 99–100.

Tax legislation is to be construed strictly. *United States v. Merriam*, 263 U. S. 179, 187. A careful reading of the then existing legislation relative to stamps on documents, to which the act of 1932 was merely an addition, including the many exemptions and provisos therein contained, convinces us that it was the intent of the Congress to impose the tax upon genuine transactions such as would ordinarily be understood and described as "sales" or "transfers." The return of securities previously purchased for fraud or illegality on the part of the seller, whereby the original sale is avoided, would not be so understood. That is not a sale or transfer in the ordinary course of events. It is the negation of a sale. It is not a voluntary transaction between parties. It is the exercise by a person wronged of his legal right of redress. It would be strange if after one tax has been paid upon a supposed sale, another must be paid in order to avoid that sale. Our opinion is strengthened by the fact that the 1932 act itself provides that "where the transfer is by delivery of the instrument assigned in blank there shall be made and delivered by the seller to the buyer a bill or memorandum of such sale," and by the fact that the penal provision contained therein relates only to sales. We think this conclusion is consistent with the reasoning in *Provost v. United States*, 269 U. S. 443. The same result

was reached in *Carman Manuf. Co.* v. *Poe,* 7 Fed. Sup. 716. See also *Weiss* v. *Stearn,* 265 U. S. 242; *Metropolitan Stock Exchange* v. *Gill,* 199 Fed. Rep. 545; *Shreveport-El Dorado Pipe Line Co. Inc.* v. *McGrawl,* 63 Fed. Rep. (2d) 202.

As what has been said covers the points raised, it is unnecessary to discuss the exceptions in further detail.

*Exceptions overruled.*