**PENNROAD CORPORATION v. LADNER, Former Collector of Internal Revenue.**

No. 18578.

District Court, E. D. Pennsylvania.
June 22, 1937.

George G. Chandler and Robert T. McCracken, both of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., and E. F. McMahon, Sp. Asst. to the Atty. Gen., for defendant.

DICKINSON, District Judge.

This case raises an interesting question of law dependent upon an ultimate fact finding. There are no evidentiary facts in controversy. The real problem is to get the correct concept of a transaction.

Title 8 of the Revenue Act of 1926, § 800 et seq., Schedule A—3, 44 Stat. 101, imposes a stamp tax upon every share of stock made the subject of any "sales or agreements to sell or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock * * * or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not."

These many alternative phrases give much seeming complexity to the act. They are, however, merely catch-all words intended to include every change in ownership of stock however camouflaged. The tax is imposed upon the transfer. The words of the act include both an agreement to sell and a sale, but there was no intent to impose a dual tax, one upon an agreement to transfer and the other upon the transfer when made. The collector levied the tax here in question, which the plaintiff paid under protest, and by this action seeks to recover the money thus paid. The sole question is whether the tax levied by the collector was imposed by law.

It is impossible to state the transaction here in question without giving it a complexity which renders it difficult to grasp. It is best presented in its results. A corporation issues shares of stock to those who subscribe and pay for them. The written evidence of the ownership of shares thus issued is known as a certificate of stock. The holder of such certificate may sell and transfer it. Such transfer is subject to the tax. The purchaser may have the certificate surrendered to the corporation and canceled and a new certificate issued to him in his name. A common mode of transfer is by indorsing it on the certificate. The transferee may have the transfer noted on the records of the corporation or, having the power to do this, may retain the indorsed certificate as evidence of his title. There has been a transfer in the one case and likewise in the other. Every stockholder has the right to a voice in the affairs of the company by exercising his right to vote. This right belongs to him as a stockholder, but it is not what makes him a stockholder. As stockholder, he has other rights and he may forego his right to vote without affecting his other rights. This he may do by refraining from voting; by nominating a proxy or, what is in effect the same thing, by transferring his right to vote to a voting trust. Whether he does one or the other he is still a shareholder, and, if he does nothing more, he remains a shareholder. He may, however, transfer his stock to the one who is to vote for him and thus give to his proxy the right to vote as himself a stockholder.

What was done in the instant case was simply this: The organizers of the Pennroad Company had their own ideas of how the business of the company should be conducted in order to assure its success. They invited the money contributions of others. If, however, they became stockholders and the right to vote was exercised by them, the management of the company and the conduct of its business might be taken out of the hands of its organizers. A voting trust might be organized and the stockholders of the company invited to surrender their voting rights to the voting

trust. Some of them might, however, refuse. How could it be assured that none would so do? The plan was simplicity itself as viewed by the plaintiff. Three individuals subscribed for what may be called all the stock and made the voting agreement as stockholders. They then sold to those who otherwise would have become stockholders, not shares of stock, but voting trust certificates.

The defendant does not feel concerned with the name given to the transaction which in his view is simply a transfer of stock under the name of trust certificates. Which view is the correct one? We have often likened situations of this kind to a well-known soap sign. The sign is made of metal which does not change in form or substance. Viewed, however, from one angle, the sign is "Ivory Soap"; from another "It Floats"; and from still another it is "99% Pure." Here from one point of view this sign reads taxable and from another not taxable. Which is the correct point of view?

There is grave danger in this case of our view of the forest being obstructed by the leaves. The tax in question is not on the issue of stock but on its transfer. The at least formal fact is that it issued to three individuals, who, as stockholders, constituted themselves to be the trustees under a voting trust which they as stockholders organized. They then sold certificates in this voting trust to others. We see no reason for finding otherwise than that this formal transaction was the real one. This reduces the question to whether the contribution of money in consideration of the issue of voting trust certificates was a purchase of stock. We are not concerned with the name given to it. The argument has been reduced to one of authorities.

The plaintiff relies upon White v. Consolidated Equities, 1 Cir., 78 F.2d 435, and other like rulings.

Counsel for defendant concedes that this case and other lower court cases support the plaintiff, but assert that these rulings are erroneous and in conflict with Raybestos-Manhattan v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111; Founders General Corporation v. Hoey, United States v. Leach Co., 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639, ruled March 1st, 1937.

The sole inquiry thus becomes, What do these latter cases rule? We do not read either of them as in conflict with White v. Consolidated Equities, supra, under which the plaintiff should have judgment. We accordingly so hold.