**CHESAPEAKE & O. RY. CO. v. HOEY,**
**Collector of Internal Revenue.**

District Court, S. D. New York.

April 1, 1941.

White & Case, of New York City, and J. C. Kauffman, of Cleveland, Ohio (Russell D. Morrill, of New York City, and John B. Marshall, of Cleveland, Ohio, of counsel), for plaintiff.

John T. Cahill, U. S. Atty., for Southern District of New York, of New York City (William L. Lynch, Asst. U. S. Atty., of New York City, of counsel), for defendant.

MANDELBAUM, District Judge.

This is a tax refund suit. The plaintiff and the defendant have made cross-motions for judgment on the pleadings.

The sole issue is whether the "Amending Agreement" of February 1, 1936 is a new "agreement to sell" and thus a new taxable event within the meaning and in-

tent of Section 800, Schedule A-3 of Title VIII of the Revenue Act of 1926, as amended.

The plaintiff duly filed its claim for refund of $15,292 of documentary stamp taxes claimed to have been erroneously and unlawfully collected by the defendant. The claim was rejected and the instant suit followed.

The facts leading up to the "Amending Agreement" of February 1, 1936 are the following: Plaintiff and the Alleghany Corporation entered into an option agreement dated February 1, 1932 in which the plaintiff acquired the exclusive right to purchase from Alleghany, on or before February 1, 1936, a certain number of common stock shares of two railroad companies. Terms and conditions were therein incorporated dealing with the purchase of the stock at once or a portion of it from time to time; interest payments, defaults and the giving of notice in connection with certain contingencies. The depository of the stock was the New York Trust Company of New York City, and its nominee was Wilson & Company. The various exchanges of stock and money was to be carried out through the aforementioned depository. The initial steps of the option agreement were duly carried out by both sides.

On January 29, 1936, prior to the expiration date of the option (February 1, 1936), the parties executed what is termed by the plaintiff to be an "Amending Agreement" of the original option contract. The "Amending Agreement" was dated February 1, 1936 and it purported to alter the original agreement in some respects. Among other things, it required the plaintiff to deposit additional earnest money and the termination date of the option was extended to February 1, 1938. In all other respects, the terms and conditions of the original option agreement were made a part of the "Amending Agreement".

Three separate stamp taxes were paid on this entire transaction. The first, in February, 1932 on the transfer from the Alleghany Corporation to Wilson & Company. The second, in March, 1936, on the original option agreement taxed as an agreement to sell. There is no claim or dispute regarding these first two payments. The third tax, amounting to $15,292, was paid on January 31, 1938, on the transfer of the stock from Wilson & Company to the plaintiff. This is the tax which is the subject of this suit.

In the claim for refund filed with the Collector of Internal Revenue, the plaintiff stated that the tax was erroneous because the transfer of stock from Wilson & Company to it was merely in fulfillment of the agreement to sell (the original option contract) which itself had been taxed (in March, 1936) and should have been exempt under Regulations 71, Section 35, subdivisions (a) and (p).

Apparently the Commissioner of Internal Revenue, recognizing the force of this contention, agreed that the transfer from Wilson & Company to the plaintiff was not taxable, being in fulfillment of an agreement to sell which itself had been taxed. But he nevertheless rejected the claim for refund, stating that the "Amending Agreement", dated February 1, 1936 was itself taxable as an agreement to sell. That, since the amount paid should have been paid on this document, the plaintiff was not entitled to a refund.

In attempting to sustain the tax, the government appears to rely chiefly on the essential differences between an ordinary contract and an option agreement such as the one at bar. It contends that the time element is the very essence of an option contract and consequently any change in time necessarily results in a new and different agreement. In other words, with the execution of the "Amending Agreement" there emerged a new and different agreement and the document evidencing this agreement is subject to the documentary stamp tax pursuant to Section 800, Schedule A-3 of the Revenue Act of 1926, as amended.

On the other hand, the plaintiff contends that the "Amending Agreement" is not an independent agreement for the sale of the stock because it could have no meaning apart from the terms of the original option contract; that it was a continuing agreement in which the termination date was extended; that although the terms were altered in some respects, it covered not only the same parties, the same securities and the same purchase price, but all sums paid on the original option contract were credited to the original purchase price. Therefore, the "Amending Agreement" is not the kind of an agreement subject to tax within the meaning and intent of the instant revenue statute.

The statute itself does not furnish much light on the problem at hand. Paraphrased, it merely states that a stamp tax shall be imposed on all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any shares or certificates mentioned in a designated subdivision of the statute.

This is obviously a very comprehensive taxing statute. The effect of this tax is stated in Pennroad Corporation v. Ladner, D.C., 21 F.Supp. 575, 576, where the court said that the alternate phrases of the section were intended to include every change in ownership of stock, however camouflaged. Further, there was no intent to impose a dual tax, one upon an agreement to transfer and the other upon the transfer when made. (This decision was reversed but the general proposition enunciated was not in any sense disapproved—Ladner v. Pennroad Corp., 3 Cir., 97 F.2d 10.)

With the evident purpose of this taxing statute in mind, I am persuaded that irrespective of whether the "Amending Agreement" is considered an independent agreement, or a continuation of the original option contract, the meaning of the term "agreement to sell" as employed in the statute was not intended to apply to the "Amending Agreement" at bar. In Grueby v. Chase Harris Forbes Corp., 292 Mass. 156, 197 N.E. 624, 100 A.L.R. 1414, Schedule A-9 of Section 800 of the Revenue Act of 1926 was involved. That schedule was patterned after Schedule A-3 presently under consideration. The claim was there made that the failure to stamp bonds in accordance with the provisions of Schedule A-9 which imposed a tax upon all sales, or agreements to sell or memoranda of sales, et seq. of corporate bonds, vitiated a tender of the bonds upon rescission of the contract. The court overruled this defense and said (197 N.E. 628): " * * * it was the intent of the Congress to impose the tax upon genuine transactions such as would ordinarily be understood and described as 'sales' or 'transfers.' "

Here, it is my opinion that it was the original option agreement which created in the plaintiff the right to receive the shares of stock and the "Amending Agreement" did not enlarge plaintiff's existing right.

Article 35, Regulation 71, gives a list of sales or transfers not subject to the tax, such as "(a) the transfer of stock pursuant to a sale, where the previous memorandum of sale has been duly stamped"; "(p) a 'call' is an agreement to sell and is taxable; but a transfer of a certificate of stock pursuant to the 'call' is not taxable, being only a fulfillment of the original agreement."

The proposal by the government to place a second tax on the "Amending Agreement" of February 1, 1936 is, in my opinion, just as much in conflict with the express provisions of the above regulations, as would be the imposition of a tax on the transfer of the shares in fulfillment of the agreement.

Limiting this decision to the issue presented on the particular facts in this case, I believe that the government is attempting by a roundabout method to impose a tax which it concedes it could not do directly (to tax the transfer from Wilson & Company to the plaintiff).

It is therefore my conclusion that the execution and delivery of the "Amending Agreement" was not a new taxable event because it merely recognized the existing right (under the original option agreement) of the plaintiff to receive the shares of stock. See also informal ruling of the Commissioner of Internal Revenue No. 79, August 24th, 1932, 413 C.C.H. Page 5656.

The plaintiff is entitled to judgment on the pleadings as demanded in the complaint.