ATLANTIC NATIONAL BANK *vs.* NATHANIEL HARRIS.

Suffolk.   March 24. — June 28, 1875.   AMES & DEVENS, JJ., absent.

A state bank paid to its president money which he falsely represented that he had paid to an agent to whom the bank was indebted. After this the state bank was duly changed into a national bank, and the new association was sued by the agent and judgment recovered against it. *Held,* that it could maintain an action in its own name against the president for money had and received under the St. of 1870, *c.* 217, the fact of sale by the state bank and purchase of the chose in action by the plaintiff being set forth in the writ.

A bank in 1863 paid to its president money which he falsely represented that he had paid to an agent to whom the bank was indebted. In 1869, the agent brought an action against the bank and recovered the amount due him. Prior to that action, none of the other officers of the bank knew of the claim of the agent. *Held,* in an action for money had and received brought by the bank against the president in 1871, that the judge, before whom the case was tried without a jury, was warranted in finding that the defendant fraudulently concealed the cause of action from the bank, and that the action was not barred by the statute of limitations.

If the defendant, in an action for money had and received, has fraudulently obtained the plaintiff's money, he is chargeable with interest from the time of his so obtaining it, and not only from the time of a demand.

CONTRACT for money had and received, with interest. The writ, dated July 21, 1871, described the plaintiff as " a banking association duly established by law under the laws of the United States, and located and having its place of business in said Boston, to which corporation all the assets, choses in action and other property, real and personal, of the president, directors and company of the Atlantic Bank, a corporation established and formerly existing under the laws of Massachusetts, including the demand sued for in the first count of the declaration in this action, have been duly assigned and sold by said president, directors and company of the Atlantic Bank, and the same have been purchased by the plaintiff corporation."

The declaration alleged the payment by the Atlantic Bank of $1506.67 on August 3, 1863, to the defendant, for services rendered by P. W. Pierce, for twenty months, in St. Louis, on the fraudulent representation of the defendant that the same was due him for money paid to Pierce; that the same was not paid by the defendant to Pierce, who afterwards, and within six years last past, sued the plaintiff for said services, and recovered therefor and obtained payment of the above sum from the plaintiff. The

answer contained a general denial; alleged that the right of action, if any, existed in the Atlantic Bank, in whose name it should have been brought; and set up the statute of limitations.

At the trial in the Superior Court, to whose judgment the case was submitted on an agreed statement of facts, *Brigham*, C. J., ruled that the action was not barred by the statute of limitations, but that the plaintiff could recover interest only from the date of the writ, and assessed damages in the sum of $1506.67, with interest thereon from the date of the writ. The plaintiff and the defendant severally alleged exceptions, the substance of which appears in the opinion.

*H. C. Hutchins*, for the defendant.

*C. A. Welch*, for the plaintiff.

ENDICOTT, J. It appears from the agreed statement of facts, that the Atlantic Bank, a corporation under the laws of this Commonwealth, was previously to 1863 the owner of certain real estate in St. Louis, which it had taken for debt. The defendant was then president of the bank, and in its behalf he employed one Pierce, who was at that time in his personal service upon a salary, to go to St. Louis and take charge of, manage and improve the real estate. Pierce was engaged in that duty for twenty months. The defendant in January, 1864, presented to the bank a bill of $1506.67, for money by him paid to Pierce for his services; and on August 3, 1864, the bank paid the defendant that sum, and he receipted the bill. The defendant had not then paid the money to Pierce, as represented in his bill, and never paid him.

In December, 1864, the Atlantic Bank was changed and converted into a national banking association, under the name of the Atlantic National Bank of Boston, the plaintiff in this action, and the defendant became president of the association. It is admitted that the plaintiff took all the property and paid all the debts of the state bank.

On April 29, 1869, Pierce brought an action against the plaintiff for his services so rendered the Atlantic Bank, and recovered their value, in the same sum which had been paid the defendant upon his representation that he had paid Pierce. It is admitted that the plaintiff was liable for this debt, that it was rightfully recovered, and that neither the Atlantic Bank, nor the plaintiff,

nor any officer of either institution, except the defendant, had any notice of Pierce's claim, or that he had not been paid, or of the plaintiff's claim upon the defendant, until Pierce's action was brought.

The defendant contends, upon these facts, that the plaintiff cannot maintain this action in its own name; and, if it can, that the action is barred by the statute of limitations. The presiding judge in the court below held and found that the action could be maintained, and was not barred by the statute; to which the defendant excepts. He also held that interest could be allowed only from the date of the writ, to which ruling the plaintiff excepts, contending that interest should be allowed from August 3, 1864, when the defendant received the money he pretended had been by him paid to Pierce. Three questions are therefore presented for decision.

1. The Atlantic Bank, being indebted to Pierce, could at the time of its conversion have maintained an action against the defendant for the money wrongfully obtained by him. That the plaintiff upon its organization became liable to Pierce for this debt of the Atlantic Bank is conceded; and the first question is, whether the right of action against the defendant passed to the plaintiff with the other property of the Atlantic Bank, and whether it can maintain an action thereon in its own name.

Under the statutes of the United States of 1863, *c.* 58, § 61, and of 1864, *c.* 106, § 44, any state bank could become or be converted into a national banking association. In such case, the articles of association, and the certificate of organization required by those statutes, were to be executed by a majority of the directors of the state bank; and such certificate must declare that the owners of two thirds of the capital stock of the bank had authorized the directors to make such certificate, and to change and convert the bank into a national association. The majority of the directors are also empowered to execute all papers and to do whatever is necessary to complete the organization, and they are to continue to act as directors of the national association until others are chosen and qualified under the provisions of the act. The par value of the shares, and also the amount of the capital stock, may remain the same, provided the capital shall rot be less than prescribed by the acts of Congress.

To enable banks in this Commonwealth to become banking associations under the laws of the United States, and to surrender their charters, the Legislature enacted the St. of 1863, c. 244, and the St. of 1864, c. 190. Both acts were in force when the plaintiff corporation was organized. These acts contain many provisions not material to this inquiry; but it is provided that when the stockholders have voted to become a national association, and the directors have procured the authority of the owners of two thirds of the capital stock to make the certificate required by the laws of the United States, notice thereof shall be published, and also sent to each stockholder; and thereupon the bank commissioners shall determine and certify the market value of the shares, at the date of the certificate, to the directors, and any stockholder who has not given his authority to the directors, and who desires to surrender his certificate of stock, shall be paid by the bank the market value of his stock. St. 1863, c. 244, §§ 2, 3. St. 1864, c. 190, § 4. · Security is also required to be given by the bank for the redemption by the association of bills issued before its conversion, and in certain contingencies and under certain regulations the association may be authorized by the bank commissioners to reissue and continue in circulation such outstanding bills for a limited time; St. 1863, c. 244, § 6; St. 1864, c. 190, § 1; and while such bills are continued in circulation they are liable to taxation. St. 1864, c. 190, § 3. See also subsequent acts in regard to the redemption, circulation and taxation of bills; Sts. 1865, cc. 163, 185; 1866, c. 223; 1868, c. 210.

When a bank has complied with the requirements necessary to convert it into a national association, and proper certificates thereof have been given to the Governor and Council, notice to that effect shall be published, and the bank shall be deemed to have surrendered its charter subject to the provision that it shall be continued a body corporate for the term of three years, for the purpose of prosecuting and defending suits, and to enable it to close its · concerns, and convey its property, but not for the purpose of continuing the business for which it was established. St. 1863, c. 244, §§ 1, 8. This provision has been somewhat modified by the acts already cited and by the St. of 1869, c. 437; and where a bank had not conveyed its real estate within the three years, the Legislature has passed a special act to enable it to do so. Sts. 1869, c. 295; 1870, cc. 15, 32, 38, 42.

It appears that under the statutes of the United States and the Sts. of 1863 and 1864 of this Commonwealth, the Atlantic Bank was in December, 1864, changed and converted into a national association under the name and style borne by the plaintiff, and that all the articles, certificates and papers necessary to complete its organization were executed, that all publications required were made, and that all the property of the state bank was duly transferred, to which proceedings the defendant, in his capacity as president, was a party.

The evident intent of the statutes thus enacted by the United States and by this Commonwealth was to enable a state bank voluntarily to become a new organization under the laws and jurisdiction of the United States, by complying with the necessary formalities and by the transfer of its stock, its property of every description and all its liabilities. The rights of any stockholder declining to give authority to make the change are carefully guarded. On the execution of the necessary papers and on the approval by the proper officers, the directors of the state bank became the directors of the national bank, the capital stock and the stockholders of the old bank became the stock and stockholders of the new, together with the right to all the property, not specially excepted, and the obligation to pay all indebtedness not otherwise provided for. No other assignment was necessary to pass the personal property; the completion of the conversion contemplated by the statutes carried with it the assignment and transfer of all personal property and rights of action, and the consequent liability to pay debts.

The provision of the St. of 1863, *c.* 244, § 1, that the bank shall be continued a body corporate for the term of three years for certain purposes, does not necessarily conflict with this interpretation.

There are many reasons why such a provision was necessary. The bank was required to give security for the redemption of its bills, it was liable to be taxed for them while in circulation, it alone could make the necessary conveyances of real estate, it might continue to hold property not transferred to the new organization; and for the prosecution of all suits pending and all suits, which must necessarily be brought against it or by it in its own name, the provision was essential. By continuing the exist-

ence of banks, thus converted, as bodies corporate, the Commonwealth was enabled to regulate those matters peculiarly within its province to provide for, as appears by the numerous statutes subsequently passed in relation to the redemption, circulation and taxation of bank bills.

By the transfer, therefore, of all the property of the Atlantic Bank to the plaintiff on the completion of its organization, this chose in action passed to the plaintiff to the same extent as if formally and in terms assigned.

The St. of 1870, *c.* 217, renders it unnecessary to consider the question whether by force of the statutes, changing a state to a national bank, an action could be brought by the plaintiff in its own name, as assignee of a chose in action. That statute provides that upon choses in action sold or assigned by any bank whose charter has expired, an action may be brought in the name of the purchaser or assignee ; thus changing in such case the rule of practice prevailing in this Commonwealth. *Leach* v. *Greene*, 116 Mass. 534. The three years during which the Atlantic Bank continued a body corporate had expired when the cause of action was disclosed. The fact of the assignment is sufficiently set forth in the writ, and this action is, therefore, properly brought by the plaintiff.

2. The money thus sought to be recovered was paid to the defendant in August, 1863. The writ is dated July 21, 1871. There is no controversy between the parties that the action is barred by the statute of limitations, unless the defendant fraudulently concealed the cause of action from the plaintiff. Gen. Sts. *c.* 155, § 12. If he did, the action may be brought within six years from the discovery, which appears by the statement of facts to have been made when Pierce brought his action in April, 1869.

The finding of the presiding judge, that the cause of action was not barred by the statute, involved the decision by him of the fact whether it was fraudulently concealed by the defendant; and the only question upon the facts stated is, whether there was evidence upon which he could so find ? We are of opinion that there was evidence of fraudulent concealment of the cause of action by the defendant, and that the finding is justified.

The defendant was intrusted with the duty of employing Pierce, and having falsely represented that he had paid him, received from the bank the sum of $1506.67. He was then and for a long time afterward president of the bank, occupying a position of trust and confidence, and the plaintiff might well rely, and had the right to rely, upon him for the communication of all facts within his knowledge, relating to the employment of Pierce and his claims against the bank. It is clearly to be inferred, from the facts stated, that the defendant knew that Pierce had the right to sue the bank, that the bank was liable to pay him for services, already once paid for, and that it had a right of action to recover from the defendant the money it had so paid. He also knew that no officer of the Atlantic Bank, or of the Atlantic National Bank, knew of the claim Pierce had against the plaintiff, until Pierce brought his action in 1869. Under these circumstances, the presiding judge might well have found that the defendant, as president, had a duty to perform which he failed to perform; that he purposely concealed facts, well known to him, which the plaintiff was entitled to know; and that his concealment was fraudulent.

But the defendant contends that, although the plaintiff did not know of the cause of action, it had the means of ascertaining by inquiry of Pierce. But this case is to be distinguished from the numerous cases cited and relied on by the defendant. The general principle governing the fraudulent concealment of a cause of action has been considered in many cases in this Commonwealth. *First Massachusetts Turnpike* v. *Field*, 3 Mass. 201. *Homer* v. *Fish*, 1 Pick. 435. *Welles* v. *Fish*, 3 Pick. 74. *Farnam* v. *Brooks*, 9 Pick. 212, 244. *Wells* v. *Child*, 12 Allen, 333, and cases cited. In *Farnam* v. *Brooks* it was said there was no concealment if the party possesses means of acquiring a full knowledge of the facts; and in *Nudd* v. *Hamblin*, 8 Allen, 130, it was held that the omission to disclose to the owner a trespass upon real estate, if there is no fiduciary relation between the parties, and the owner has the means of discovering the facts, and nothing has been done to prevent him, is not a fraudulent concealment. That case and many of the cases cited in the opinion are relied on by the defendant, to sustain his position that the plaintiff had full means of knowing by inquiry of Pierce. But in none of those.

cases did the defendant occupy the position of the defendant in this case. A bank must necessarily act through its officers; its officer upon whom it relied in this instance was the defendant, who had charge of this particular transaction with Pierce; and he, who should have disclosed the cause of action, was the party engaged in concealing it.

3. The money was obtained by the defendant wrongfully, and wrongfully detained. It was not due him, and he had no right then or since to hold it. Interest should, therefore, be allowed from the time of the receipt by him. *Wood* v. *Robbins*, 11 Mass. 504.

The result is that the defendant's exceptions are overruled, and the plaintiff's exception is sustained; and the case is to stand for trial on the single question of the computation of interest on the sum of $1506.67.                          *Judgment accordingly.*