FREDERICK S. DEITRICK, receiver, *vs.* MAX SIEGEL.

Suffolk.     December 7, 8, 1942. — April 26, 1943.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & RONAN, JJ.

*National Bank*, Consolidation with trust company. *Trust Company*, Consolidation with national bank. *Bills and Notes*, Payee. *Limitations, Statute of*.

A consolidated national bank resulting from consolidation of a national bank with a trust company under U. S. C. (1934 ed.) Title 12, § 34A, was in substance and effect and within G. L. (Ter. Ed.) c. 260, § 1, Third, the "original payee" of a witnessed note payable to the trust company and among its assets at the time of the consolidation, and a receiver of the consolidated national bank was not barred from maintaining an action on the note brought more than six but less than twenty years after its maturity.

CONTRACT. Writ in the Municipal Court of the City of Boston dated March 25, 1940.

The case was heard by *Donovan, J.*

*G. S. Fuller,* (*C. M. Goldman* with him,) for the plaintiff.

*M. H. Golburgh,* for the defendant.

DOLAN, J. This is an action of contract upon a promissory note, secured by a mortgage of real estate, to recover a deficiency resulting from foreclosure proceedings. The judge found for the plaintiff in the amount of $59,310.64 which included interest. The case comes before us on the plaintiff's appeal from an order of the Appellate Division that the finding for the plaintiff be vacated and that judgment be entered for the defendant.

The defendant's answer contains a general denial, an allegation of payment, a denial of his signature with a call for proof thereof, and allegations that he is an accommodation maker and that the action is barred by the statute of limitations. At the trial he admitted the genuineness of his signature and introduced evidence for the purpose of proving that the note was not witnessed in his presence or to his knowledge.

One of the two contentions of the defendant is that the judge erred in denying his request for a ruling to the effect that if the "court find that the note was executed and delivered without a signature of a witness, and that thereafter without the knowledge or consent of the defendant a third party affixed his signature thereto, purporting to be a witness, this does not make it a witnessed note and the six years limitation of action applies." In denying this request the judge stated that he did not so find. Oral testimony as to this subject matter had been heard by the judge and he found that the "note was signed by the defendant in the presence of Julius I. Berns, Esquire, a member of the bar, then acting as attorney for the Beacon Trust Company [the payee], who, in the presence of the defendant, and with his knowledge and consent, signed said note as a witness . . . to the defendant's signature." Mr. Berns had testified that "the alleged signature placed on the note as an attesting witness, looks somewhat like his signature, but that 'if he had signed that note, his signature must have changed considerably in the past fifteen years'; that he did not recall ever signing the note," or seeing the note before, or ever having seen the defendant before, but that "if it were his signature he would not have put it there unless he saw the defendant sign." Mr. Berns further testified that he signed the certificate of title made in connection with the transaction with the defendant, which was attached to the application. This certificate was introduced and the signature of Mr. Berns thereon was compared with that of "Julius I. Berns" appearing on the note. There was other testimony tending to show that the note was not witnessed by Mr. Berns in the presence of the defendant. The weight to be given to the oral testimony of witnesses was for the trial judge, and his finding for the plaintiff is not reversible as such by the Appellate Division, or by us on appeal from an order of the Appellate Division, except as such finding is affected by error in rulings of law presented by the report. *Adamaitis* v. *Metropolitan Life Ins. Co.* 295 Mass. 215, 221. *Codman* v. *Beane,* 312 Mass. 570, 573, and cases cited. In the instant case

there was some proof of due attestation of the note. See *Tompson* v. *Fisher*, 123 Mass. 559, 560, 561. *Phillips* v. *Vorenberg*, 259 Mass. 46, 68. It follows that the denial of the requested ruling in question was not erroneous, and that the remaining issue to be decided must be dealt with on the basis that the note involved was a witnessed note.

The facts disclosed by the evidence and found by the judge bearing upon the question that we now approach may be summed up as follows: The defendant signed the note by which he promised to pay $70,000 to the Beacon Trust Company or order, in five years from its date, August 5, 1926, with interest payable quarter-annually at the rate of six per cent per annum. The defendant signed the note as an accommodation maker for the Exchange Realty Company. At the same time the defendant executed a mortgage of certain real estate which he held as a straw for that company. The note was indorsed by one Rich "waiving demand and notice" and was delivered to the payee. Rich was one of the owners and officers of the realty company. In return for the note and mortgage the payee, the Beacon Trust Company, advanced the sum of $70,000 to the realty company "in the nature of a loan to the defendant." The last payment on the note "either by way of principal or interest" was made by the realty company on April 26, 1933, "or more than six years prior to March 25, 1940, the date of the plaintiff's writ."

On or about July 31, 1930, the payee, Beacon Trust Company, and the Atlantic National Bank of Boston were duly consolidated under the corporate title of "The Atlantic National Bank of Boston," and all the assets of the first named, including the note and mortgage in question, became the property of the last named. In connection with this consolidation, the Beacon Trust Company indorsed the note in blank "waiving demand and notice," and assigned "the defendant's . . . mortgage and note to . . . [the] Atlantic National Bank." The assignment was duly recorded. Subsequently the plaintiff was appointed receiver of the Atlantic National Bank, the assets of which, including the note and mortgage here involved, were absorbed

by The First National Bank of Boston, the "present owner and holder of . . . [the] note." The present action is brought by the plaintiff as receiver of the Atlantic National Bank for the benefit of the present holder of the note.

The defendant's first request for a ruling was that the burden was on the plaintiff to prove that the Atlantic National Bank was the original payee of the note declared upon. The judge allowed the request as modified by him in the following words: "or that the plaintiff stands in the same relationship as the payee of said note." The defendant objects that, as modified, the ruling was erroneous. The second request was to the effect that since the evidence showed that the Atlantic National Bank was an indorsee it could not be considered the original payee. This request was denied as not applicable to the facts found. The fourth request was that the judge must find from the evidence that the Atlantic National Bank was not the original payee, but was a holder and indorsee, and therefore is barred by the statute of limitations from recovering in this action. This request was denied. The eighth request was to the effect that, if the judge found that there was a merger between the original payee and the Atlantic National Bank "and in the said merger the promissory note . . . was conveyed to . . . [it] as part of the assets, then the six years statute of limitations applies regardless of whether the . . . note was witnessed." This request was denied by the judge.

The defendant puts forward that the question to be decided is "whether the Atlantic National Bank continued the identity of the Beacon Trust Company, the payee of the note, so that an action brought by or in the name of . . . [the former] is in effect an action brought by the trust company in a state of continued existence, or (its existence continuing) in its name acquired by the consolidation, and therefore within the twenty-year limit of the statute." The defendant argues that by the merger with the Atlantic National Bank the trust company ceased to exist, and, relying upon the statute of limitations, argues that recovery in the present action is barred.

The statute of limitations, G. L. (Ter. Ed.) c. 260, provides by § 1, Third, that "The following actions shall be commenced only within twenty years next after the cause of action accrues . . . Actions upon promissory notes signed in the presence of an attesting witness, if brought by the original payee or by his executor or administrator." The question therefore is whether as matter of law it can be said that the Atlantic National Bank stands in the position of a payee of the note. The defendant relies upon *Worcester County National Bank, petitioner*, 263 Mass. 444, affirmed, 279 U. S. 347, 359–360.

The consolidation of the Beacon Trust Company with the Atlantic National Bank was accomplished under the provisions of U. S. C. (1934 ed.) Title 12, § 34A (see now U. S. C. [1940 ed.] Title 12, § 34A). Section 34A so far as here material provides as follows: "Any bank incorporated under the laws of any State . . . may be consolidated with a national banking association located in the same State . . . under the charter of such national banking association on such terms and conditions as may be lawfully agreed upon by a majority of the board of directors of each association or bank proposing to consolidate . . . Upon such a consolidation . . . the corporate existence of each of the constituent banks and national banking associations participating in such consolidation shall be merged into and continued in the consolidated national banking association and the consolidated association shall be deemed to be the same corporation as each of the constituent institutions. All the rights, franchises, and interests of each of such constituent banks and national banking associations in and to every species of property, real, personal, and mixed, and choses in action thereto belonging, shall be deemed to be transferred to and vested in such consolidated national banking association without any deed or other transfer; and such consolidated national banking association, by virtue of such consolidation and without any order or other action on the part of any court or otherwise, shall hold and enjoy the same and all rights of property, franchises, and interests, including appointments, designations, and nominations and all other

rights and interests as trustee, executor, administrator . . . and in every other fiduciary capacity."

In *Pitts* v. *Holmes*, 10 Cush. 92, 95, construing St. 1838, c. 163, § 5 (see now G. L. [Ter. Ed.] c. 216, § 54, the operation of which is, however, suspended by the Federal bankruptcy act, U. S. C. Title 11), which defined the rights of an assignee in insolvency proceedings, the court described the statute as exceedingly comprehensive and absolute, saying: "The assignment by the master vests in the assignee all the property real and personal, which the insolvent debtor could, by any way or means, have lawfully sold, assigned or conveyed, with all debts due to him or to any person for his use; it gives to the assignee all the like remedy to recover the estate, debts and effects of the insolvent debtor in his own name, which the insolvent debtor might have had but for the assignment; and in all suits prosecuted by the assignee for any debt, demand, right, title or interest due or belonging to the insolvent debtor, the assignment is to be deemed as conclusive evidence of the assignee's authority to sue. St. 1838, c. 163, § 5. It would not be easy to add to the cumulative strength of expression by which the statute thus provides for vesting in the assignee all the property, and all the rights of action, of the insolvent debtor." In that case the court held that the witnessed note continued to be saved by the statute in the hands of the assignee of the insolvent debtor. This interpretation would seem to apply with equal force to the provisions of the Federal statute in the case at bar, under which it is provided that all the rights, franchises and interests of the constituent institutions in every species of property shall be deemed to be transferred to and vested in the consolidated national banking association by virtue of the consolidation without any deed or other transfer and without any action on the part of any court or otherwise, and that the consolidated national banking association shall hold and enjoy the same and all rights of property. It would seem that the purposes of G. L. (Ter. Ed.) c. 260, § 1, Third, would be as fully met and the rights of the defendant as fully protected as in the case of an assignee in insolvency, where, as before pointed out, al-

though an assignee is not the executor or administrator of his assignor, yet it was held that a witnessed note in the hands of the assignee of an insolvent debtor is saved by the statute. *Pitts* v. *Holmes*, 10 Cush. 92, 95.

The defendant, however, pointing out that the Federal statute in question provides that "No such consolidation shall be in contravention of the law of the State under which such bank is incorporated," and relying upon *Worcester County National Bank, petitioner,* 263 Mass. 444, argues that by reason of the consolidation the trust company lost its identity, ceased to be an institution capable of transacting business, that it has gone out of existence, that its assets became the property of the national bank, and that the national bank continues its existence and identity under its original charter. It is true that was said in *Worcester County National Bank, petitioner,* at page 452, but that is not all that was said in that case, and the facts in that case are distinguishable from those in the present case. In the *Worcester County National Bank* case it appeared that the Fitchburg Bank and Trust Company had been consolidated with the Worcester County National Bank under the same act of Congress with which we are here concerned. The trust company had been appointed executor of a will. The national bank petitioned for the allowance of its first and final account as executor as successor to the trust company, and upon a report of the case it was held in effect, notwithstanding the provisions of the Federal statute relating to the holding and enjoying of fiduciary rights by the consolidated bank, that fiduciary positions requiring the approval or appointment of our courts were not property rights which passed to the consolidated bank, and that the petitioner was an executor de son tort. See also *Commonwealth–Atlantic National Bank, petitioner,* 249 Mass. 440; *Atlantic National Bank, petitioner,* 261 Mass. 217. In affirming the decision of this court in the *Worcester County National Bank* case the Supreme Court of the United States speaking through Taft, C.J., held that the Federal statute by its own terms required complete compliance with State law, saying, "So

strongly manifest is this purpose that we do not hesitate to construe the effect of § 3 [U. S. C. (1934 ed.) Title 12, § 34A] in Massachusetts to be only to transfer the property and estate from the trust company to the national bank, to be managed and preserved as the state law provides, for administration of estates, and not to transfer the office of executor from the state trust company to the succeeding national bank." *Ex parte Worcester County National Bank,* 279 U. S. 347, 359–360. We think that that case must be confined in its application to positions of trust requiring judicial approval and appointment, and that it cannot properly be said to extend to the facts in the case at bar. There is support for this view in the language of the court in *Worcester County National Bank, petitioner,* 263 Mass. 444, the court having said at page 452: "In view of this legal effect, in its general aspects, of the consolidation of the trust company with the national bank upon the trust company as a corporation, it must follow that its identity as a fiduciary appointed by the court of probate has not been continued in the national bank, but has been extinguished. Doubtless in many respects it may be said that the identity of corporations consolidated under the provisions of law is continued in the absorbing corporation. This is true commonly as to contract obligations. *Proprietors of Locks & Canals on Merrimack River* v. *Boston & Maine Railroad,* 245 Mass. 52, 59 . . . . *Atlantic National Bank* v. *Harris,* 118 Mass. 147. *Iowa Light, Heat & Power Co.* v. *First National Bank of Boston,* 250 Mass. 353, 354. In discussing questions of that nature broad language may be found in opinions of courts. . . . Such expressions and decisions . . . are not applicable to the peculiar positions of trust like executor, administrator, and other fiduciaries, established under the law and practice of this Commonwealth." Pages 452, 453. The underlying reasons for that ruling are set forth fully in the opinion. That is all that was decided and it was upon that basis that the decision of this court was affirmed in 279 U. S. 347. See *First Trust Co. of St. Paul* v. *United States,* 15 Fed. Sup. 634, 636.

In *Commonwealth–Atlantic National Bank, petitioner,* 249

Mass. 440, where a State trust company had been appointed executor of a will, and was converted thereafter by an Act of Congress into a national bank and then consolidated with another national bank, it was held that a position of trust and confidence requiring judicial confirmation, like an executorship, was not a property right that became a part of the assets of the consolidated national bank, but the court said: "For many purposes the new corporation is the successor of the old and continues its business identity" (page 446), and that "The petitioner in each of the cases at bar for most, perhaps for all, business purposes under the authority of decisions already cited, is identical with the trust company of whose property and assets it has become possessed." Page 450. And in *Atlantic National Bank, petitioner*, 261 Mass. 217, where in substance the same question was presented for decision, the court held that the fiduciary capacities involved, those of a trustee and a conservator, were not property that became vested in the consolidated bank, saying, however, that in *Commonwealth–Atlantic National Bank, petitioner*, 249 Mass. 440, "it was recognized that for many purposes the new national banking corporation was the successor of the pre-existing trust company, and for most if not all business purposes was identical therewith." Page 219. And continuing, the court, speaking of the decision in *Iowa Light, Heat & Power Co.* v. *First National 'Bank of Boston*, 250 Mass. 353, said: "That decision was right and is not at variance with the conclusion reached in *Commonwealth–Atlantic National Bank, petitioner, supra*, here affirmed. The indenture under review in . . . [the *Iowa Light, Heat & Power Co.* case] was a contract between competent parties. The rights and obligations arising therefrom were chiefly contractual in nature although partaking also of such subsidiary fiduciary nature as may spring from such a contract." Pages 220, 221.

We are of opinion that there is nothing in the decisions of this court relied upon by the defendant to support the view that the identity of the trust company did not continue in the consolidated bank with reference to the property here

involved, but, on the contrary, that in pertinent decisions of this court it has been fully recognized that a consolidated national banking association is for most, if not for all, business purposes identical with the preëxisting company. In the present case the action is based upon a purely business transaction of a contractual nature. With relation thereto the property rights of the trust company passed under the Federal statute to the Atlantic National Bank which is, in substance and effect, the preëxisting Beacon Trust Company and in that sense the payee of the note within the meaning of G. L. (Ter. Ed.) c. 260, § 1; Third. This being so, the witnessed note in question is preserved by that statute and the present action, having been brought within twenty years, may be maintained by the receiver for the benefit of the indorsee and present holder. *Pitts* v. *Holmes*, 10 Cush. 92. *Hodges* v. *Holland*, 19 Pick. 43. *Boutelle* v. *Carpenter*, 182 Mass. 417. This result, we think, is not in contravention of any law of the Commonwealth, but is consistent with our laws as they have been interpreted by this court in the decisions to which we have already referred.

We are also of opinion that the provisions of G. L. (Ter. Ed.) c. 172, § 44, that the "charter of a trust company the business of which shall . . . be consolidated or merged with, or absorbed by, another bank or trust company, . . . shall be void except for the purpose of discharging existing obligations and liabilities" are not in conflict with the result here reached. It was held in *Atlantic National Bank* v. *Harris*, 118 Mass. 147, 151, an action of contract on a claim running to a State bank which had been converted into a national bank, that the completion of the conversion without further action carried to the national bank by operation of law the right to all the property, and the assignment and transfer of all personal property and rights of action and the liability to pay all debts of the State bank. See also *Commonwealth–Atlantic National Bank, petitioner*, 249 Mass. 440, 443, 444.

It follows from what we have said that there was no error in the denial of the defendant's requests for rulings.

Accordingly the order of the Appellate Division must be reversed and instead an order must be entered dismissing the report.

*So ordered.*