No. 444305

## NEW YORK CENTRAL RAILROAD COMPANY
### v.
## MARINUCCI BROS. CO., INC.

(June 21 — December 17, 1957)

*Present:* GILLEN, J., (PRESIDING), LEWITON AND SPIEGEL, JJ.

Case tried to ADLOW, C. J., in the Municipal Court of the City of Boston.

(*This opinion has been abridged.*)

*Spiegel, S. J.* This is an action of tort to recover for alleged damages to plaintiff's property as a result of the alleged negligence of the defendant in the construction of a sewer adjacent to the plaintiff's property under a contract with the Metropolitan

District Commission. The plaintiff also alleged a nuisance which is no longer material to this case.

The report of the trial judge sets forth the following facts:

"Under a written contract with the Metropolitan District Commission the defendant performed an excavation for a sewer for a distance of 2500 feet adjacent to the plaintiff's tracks at the Natick-Framingham line. The work covered a period from September, 1954 to the time of trial but actual excavation was not started until the end of November in that year. The plans showed a large amount of water in the area to be excavated.

An assistant engineer of the plaintiff testified that: At some time during January, 1955 he went to the area involved and observed water and fine silt coming through the sheathing at the bottom of the ditch which was parallel to the tracks. He found cracks in the soil along the pole line on the railroad property about 25 feet from the excavation. There was water on both sides of the excavation and the sheathing was not holding the water. The seepage of water and silt into the ditch drew material from under the track and *resulted in a withdrawal of support from the tracks*. He suggested steel sheathing be used by the defendant, and the defendant later followed his recommendations. Early in February, 1955 this witness again visited the track and noticed a hole or a pocket under track 4 approximately 75 feet from the excavation, which, in his opinion, was due to the removal of subsoil under the track. The defendant was still using wood sheathing, although the beams were supported and held in place by steel H-bars. Steel sheathing was first used toward the end of February, 1955.

The supervisor of tracks for the plaintiff testified that on February 10, 1955 he observed a crack along the north side of the tracks along the pole line. One of the plaintiff's poles was tilting to the north. At

that time the witness also noticed a hole in the south track which he had filled. This was known as the number 4 track and was about 75 feet from the trench. The pole line was about 25 feet from the excavation. On February 14, 1955 the crack along the bank opened up a bit more and the witness assigned a watchman to the job from that date until March 18, 1955. On September 17, 1955 the witness observed that track number 1, the most northerly track, situated about 40 feet from the excavation, had settled about 4 inches for a distance of about 100 feet. During the whole of this period the tracks were used daily by the trains of the plaintiff. According to this witness the difficulty in driving sheathing down far enough, due to the presence of large rocks, accounted for seepage. The witness further testified that during September, 1955, he observed seepage in the ditch and water being pumped out of it.

The signal officer of the plaintiff testified that on September 1, 1955 he observed a signal box and relay housing, about 23 feet from the ditch, tipped to one side.

The plaintiff's assistant auditor testified as to the amounts expended by the plaintiff to repair the damage.

The defendant produced two witnesses, [who in substance testified that the defendant did not cause the plaintiff's damage]."

The defendant duly filed seventeen requests for rulings of which the court allowed six and denied eleven. It entered a general finding for the plaintiff in the sum of $3,174.36 *without making any special findings of fact.* The defendant claims to be aggrieved by the action of the court in denying its eleven requests numbered 1, 3, 5, 6, 8, 10, 13, 14, 15, 16 and 17.

1. The Appellate Division was designed to review questions of law and not questions involving the finding of facts unless such findings involve

errors of law. It cannot, upon reported evidence, make findings and draw inferences and conclusions different from those drawn by the trial judge. *Kolda v. National Ben Franklin Fire Insurance Co.*, 290 Mass. 182, 184.

2. The defendant's first request for ruling is in effect that, as a matter of law, the defendant was not negligent. *Ricciardone v. Carvelli*, 334 Mass. 228; *Blank v. Gorney*, 7 Mass. App. Dec. 148. This type of request must be distinguished from a request that "the evidence 'warrants' a finding for the defendant". If the defendant had worded his request in such a fashion, he would have been entitled to that ruling or to a statement of findings of fact showing that the requested ruling had become irrelevant. *Bresnick v. Heath*, 292 Mass. 293. The mere fact that the trial judge did not make special findings of fact is not fatal since he was not by law required to do so. In order for the defendant's first request to be allowed there must be, as a matter of law, insufficient evidence to warrant a finding of negligence of the defendant. Therefore, if there is no direct evidence or no evidence from which the trial judge could make reasonable inferences of duty, breach of duty, causation, or any one of these, they being the necessary elements of negligence, the defendant's first request should have been allowed. *Pearson v. O'Connell*, 291 Mass. 527, 529. The evidence indicates that some damage occurred to the plaintiff's property prior to the time that the defendant started to use steel sheathing. Witnesses for both the plaintiff and defendant stated that there was seepage from the defendant's ditch in January, 1955, and that steel sheathing was not used until the end of February, 1955.

3. Since the plans showed a large amount of water in the area to be excavated, the trial judge could reasonably infer that the defendant knew or should have known of the unusual risks in this ex-

cavation area. One of the defendant's own witnesses testified that there were two streams in the vicinity of the excavation which added to the defendant's problem of keeping water out of the ditch. The trial judge was warranted in finding this to have been a foreseeable risk. Even though this same witness testified that, in his opinion, the defendant did everything possible to prevent damage to the plaintiff's property, it was for the trial judge to determine what weight and how much credence, if any, was to be given to the oral testimony of witnesses. *Deitrick v. Siegel*, 313 Mass. 612.

The difficulty in driving the sheathing deep enough in September, 1955, causing excess water in the ditch is another risk which was the defendant's problem to overcome, or to cease excavation operations until such time as this risk could be eliminated.

The defendant also contends that the plaintiff has failed to sustain the burden of proving a causal connection between the negligence of the defendant and the plaintiff's damage. If there is a causal connection between the defendant's acts and any damage to the plaintiff's property, then the first request for rulings could not be allowed based on lack of causation, for the defendant's first request, in essence, states that there was, as a matter of law, a complete lack of evidence of negligence.

The testimony of the plaintiff's assistant engineer and its supervisor together with all of the other evidence would warrant the trial judge in drawing a reasonable inference and in finding that some damage was caused to the plaintiff's property through the defendant's negligent acts.

4. He could believe or disbelieve any of these witnesses and could attach such weight to their testimony as he deemed proper. *Deitrick v. Siegel*, 313 Mass. 612.

5. The defendant further contends that since this evidence of causation was based upon expert testi-

mony of the plaintiff's witnesses, the case is governed by the rule of *Nass v. Duxbury*, 327 Mass. 396, which was an action in tort for maintaining a nuisance. The plaintiff there alleged that the defendant's placing of sand on a beach caused a channel to fill up and thereby caused water to undermine the plaintiff's property. The plaintiff called an expert witness who was asked this question: "Assuming . . . that the jury finds as a fact that the loads of sand were dumped on that beach periodically, that is, every spring from 1935 to 1946 or 1947, would that sand change the channel of the river or change the current of the river?" There was no objection to the question which the expert answered in the affirmative. The Supreme Court stated: "A mere guess or conjecture by an expert witness in the form of a conclusion from basic facts that do not tend toward that conclusion any more than towards a contrary one has no evidential value". The court stated that the witness had no knowledge of many basic facts that were necessary to base his conclusion on. "He did not know the dimensions of the sand bar. . . . He made no measurements of the length and width of the beach . . . and he did not know how much sand had been placed on the beach or when it might have been placed."

In the present case it is conceded that there was an excessive amount of water in the ditch at various times. There seems to be no question that this excess water was leaking through the sheathing. Based on their own personal knowledge and observations, without the use of any hypothetical questions, the plaintiff's witnesses testified that this seepage caused the damage to the plaintiff's property. The trial judge, upon this evidence, could reasonably infer that since the witnesses stated and possessed sufficient basic facts, their opinions and observations were of "evidential value". The trial judge was not bound, as a matter of law, to view their testimony as mere con-

jecture or speculation. These witnesses were more than expert witnesses. The essence of their testimony was based on actual observations which were within the judge's discretion to believe or not.

The defendant contends that there is no evidence of the cause of the tipping of the plaintiff's signal box and relay housing. Here again, all that is necessary to uphold the judge's denial of the defendant's first request is some evidence of negligence. The issue as to the extent or amount of the damage is not raised by this first request, or any other request. There is, however, some evidence of causation in the tipping of said objects. The mere fact that the signal officer's testimony in and of itself did not include an opinion or statement as to causation does not preclude the trial judge from considering other evidence given by other witnesses as to causation. The trial judge could infer that this tilting was caused by the same seepage that caused the other damage alleged by the plaintiff.

Therefore, the denial of the defendant's first request was without error.

6. The defendant's third request was properly denied since it cannot be said that as a matter of law there was no evidence of damage to the plaintiff's land and soil. Although the bulk of the damage is obviously to the artificial structures on the land and not to the land itself, therefore requiring negligence on the part of the defendant, there is sufficient evidence to show that since the structures on the land were damaged, there was a certain amount of damage, however slight it may be, to the land and soil of the plaintiff.

The defendant's fifth, sixth, eighth and thirteenth requests were properly denied for the same reasons expressed in the denial of the first request.

7. The defendant's tenth request was properly denied since it is a request for a finding of fact. A ruling is rightly refused if it calls for an implied

finding and if the implied finding was not made or required as a matter of law. *Simpson v. Eastern Mass. St. Ry.*, 292 Mass. 562. A judge is not bound to make findings of fact that are not required as a matter of law upon the evidence in response to such requests for such findings. *Mimishian v. Phipps*, 311 Mass. 521, 523. This tenth request by the defendant was not phrased in appropriate words to express a request for a ruling of law. Furthermore, by properly denying the defendant's first request, the judge, in effect, found that there was evidence to warrant a finding that the defendant breached its legal duty to the plaintiff.

8. The defendant's fourteenth, fifteenth and sixteenth requests were properly denied for the reasons above stated.

The defendant's seventeenth request is, in effect, a request that, as a matter of law, the plaintiff was contributorily negligent. *Bresnick v. Heath*, 292 Mass. 293.

This request was properly denied since the evidence did not require a finding of contributory negligence. *Simpson v. Eastern Mass. St. Ry.*, 292 Mass. 562.

The order is:

*Report dismissed.*

Richard J. Ferriter, for the plaintiff.
Peter Cole, for the defendant.