WORCESTER COUNTY NATIONAL BANK *vs.* COMMISSIONER
OF BANKS.

Worcester.    March 11, 1960. — April 11, 1960.

Present: WILKINS, C.J., SPALDING, WILLIAMS, WHITTEMORE, &
CUTTER, JJ.

*Trust Company*, Conversion into national bank.  *Savings Bank*, Invest-
ments.  *National Bank*, Conversion from trust company.  *Bank and
Banking.  Superior Court*, Jurisdiction.  *Equity Jurisdiction*, Declara-
tory relief.

A suit in equity in the Superior Court for declaratory relief on the issue
whether, upon conversion of a Massachusetts trust company into a
national banking association, the dividend record of the trust com-
pany could be considered that of the national bank for the purpose of
qualifying the national bank's stock as a legal investment for Massa-
chusetts savings banks under G. L. c. 168, § 47, as appearing in St. 1955,
c. 432, § 1, was not a case "arising under" c. 168 so as to be excluded
from the equity jurisdiction of the Superior Court under c. 213, § 1A,
as amended through St. 1941, c. 28;  the Superior Court had jurisdic-
tion to give the relief sought.  [699]
Upon conversion of a Massachusetts trust company into a national bank-
ing association in accordance with the laws of the United States, the
dividend record of the trust company was to be considered that of the
national bank so that, where the dividend record of the trust company
had been such as to qualify its stock as a legal investment for Massa-
chusetts savings banks under G. L. c. 168, § 47, as appearing in St. 1955,
c. 432, § 1, the stock of the national bank was likewise qualified and
should be included in the list of legal investments prepared under c. 168,
§ 51, as so appearing.  [700–701]

BILL IN EQUITY, filed in the Superior Court on February 18,
1959.

Following a decree by *Thompson*, J., overruling a demurrer
to the bill, the suit was reported by *Bolster*, J.

*John Cancian*, for the plaintiff.

*Leo Sontag*, Assistant Attorney General, (*Pasquale J.
Piscitelli & John W. Gorman* with him,) for the defendant.

WILKINS, C.J.   For many years prior to January 12, 1959,
the capital stock of Worcester County Trust Company, a

Massachusetts trust company, was a legal investment for Massachusetts savings banks under G. L. c. 168, § 54, as amended, now § 47 as appearing in St. 1955, c. 432, § 1. On that date Worcester County Trust Company converted into a national banking association under the name of Worcester County National Bank, which is the plaintiff. G. L. c. 172, § 44, as amended. U. S. Rev. Stat. (1875) § 5154, 12 U. S. C. (1958) § 35. Thereafter the defendant Commissioner of Banks has taken the position that "the stock of the plaintiff has lost its status as a qualified legal investment for Massachusetts savings banks because of and solely by virtue of the aforesaid conversion." This bill in equity in the Superior Court seeks (1) a binding declaration of "the status and legality of the stock of the plaintiff as a legal investment for Massachusetts savings banks under the pertinent provisions of c. 168 of the General Laws"; and (2) that the "court order the defendant to place the stock of the plaintiff on the legal list of investments for Massachusetts savings banks under § 51[1] of c. 168 of the General Laws."

A demurrer to the bill was overruled. Later the case was reported without decision, upon the pleadings, the defendant's appeal from the interlocutory decree overruling the demurrer, and a statement of agreed facts. G. L. c. 214, § 31.

One ground of demurrer is that the Superior Court lacks jurisdiction of the subject matter. If the declaratory relief sought is a case arising under G. L. c. 168 this ground must be upheld.

Declaratory judgment procedure, G. L. c. 231A, was in-

---

[1] General Laws c. 168, § 51 (as appearing in St. 1955, c. 432, § 1), provides in part: "Annually, not later than July first, the commissioner shall prepare a list of all stocks, bonds, notes and other interest bearing obligations which are then legal investments under any provision of sections forty-two to forty-eight, inclusive, paragraphs 3 and 4 of section forty-nine, and section fifty of this chapter. Said list shall at all times be open to public inspection and a copy thereof shall be sent to every savings bank and to every trust company having a savings department. . . . Officers, and members of a board of investment and of a board of trustees, of a savings bank may rely upon the legal list . . . as representing an accurate listing of stocks, bonds, notes and other interest bearing obligations eligible for investment by it . . . ."

serted in our statutes by St. 1945, c. 582, § 1. Section 1 of c. 231A provides, "The supreme judicial court, the superior court, the land court and the probate courts, within their respective jurisdictions, may on appropriate proceedings make binding declarations of right, duty, status and other legal relations . . . ." Chapter 231A relates to procedure and does not deal with jurisdiction. Twentieth Report of the Judicial Council, Pub. Doc. No. 144, p. 16; 29 Mass. L. Q. No. 4. Chief Justice Hughes in *Aetna Life Ins. Co.* v. *Haworth*, 300 U. S. 227, 240. See *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731; *Meenes* v. *Goldberg*, 331 Mass. 688, 691–692.

For the jurisdiction of the Superior Court, we must turn to G. L. c. 213, § 1A (as amended through St. 1941, c. 28), which reads: "The superior court shall have original jurisdiction, concurrently with the supreme judicial court, . . . of all cases and matters of equity of which the supreme judicial court has had exclusive original jurisdiction under section two of chapter two hundred and fourteen or otherwise, other than cases arising . . . under chapters one hundred and sixty-seven, one hundred and sixty-eight and one hundred and seventy-two, relating to banks and banking . . . ." The provision of G. L. c. 214, § 2 (as amended through St. 1954, c. 439, § 2), is: "The supreme judicial court shall have original and exclusive jurisdiction in equity of all cases and matters of equity cognizable under any statute . . . and the superior court shall have like original and exclusive, or like original and concurrent, jurisdiction only if the statute so provides."

Section 1A of c. 213, when first inserted in our statutes by St. 1939, c. 257, § 1, referred only to the general banking statute, c. 167. Chapters 168 and 172, relating to savings banks and trust companies, respectively, were added by amendment in St. 1941, c. 28,[1] because of a recommendation by the Commissioner of Banks in his annual report of 1940. See 1941 House Doc. No. 4, pp. 3–4, where the commissioner

[1] An amendment by St. 1941, c. 180, not presently material, added to the exclusive jurisdiction of the Supreme Judicial Court cases arising under c. 175, relating to insurance; c. 176, relating to fraternal benefit societies; and c. 178, relating to savings bank life insurance.

stated: ". . . In the legislative committee hearings upon
the recommendations and petitions which resulted in the
enactment of said chapter 257, it was pointed out that pro-
ceedings and matters relating to banks and banking could
be more effectively and expeditiously treated by the Supreme
Judicial Court. . . . Because the wording of said chap-
ter 257 expressly referred only to said chapter 167, some
question has arisen as to whether said chapter 257 clearly
excludes from its operation certain sections of other banking
statutes, more particularly section 40 of chapter 168, relating
to the transfer of special trust funds; section 44 of chap-
ter 168, relating to the reduction of deposits in savings
banks; section 18 of chapter 172, relating to the cancellation
or other disposition of capital stock of certain trust com-
panies; section 25 of chapter 172, relating to the enforcement
of the liability of certain stockholders in trust companies;
and section 90 of chapter 172, relating to the enforcement
of the statutory provisions governing conservatorship of cer-
tain trust companies. While it is expected that only on rare
occasions will matters contemplated by the foregoing sec-
tions be brought before the Supreme Judicial Court, never-
theless, because of the centralization of records and the great
public interest which might be involved in such cases, it is
believed that the best interests of all parties concerned and
the public will be served by retaining exclusive jurisdiction
of such matters in the Supreme Judicial Court. Accord-
ingly, I recommend that chapter 257 of the Acts of 1939 be
amended so as clearly to exclude the foregoing matters from
its operation."

The declaratory relief presently sought relates to the inter-
pretation of G. L. c. 168, § 47 (as appearing in St. 1955,
c. 432, § 1[1]), and an order is asked as to the commissioner's

[1] "Such corporation [savings bank, institution for savings, and a savings
institution incorporated in this Commonwealth] may invest in the common
stock of the following banking corporations, subject to the conditions, limi-
tations and requirements of this section. 1. Massachusetts Bank Stocks. —
In the common stock, provided there is no preferred stock outstanding, of a
trust company incorporated under the laws of and doing business within this
commonwealth, or in the common stock, provided there is no preferred stock
outstanding, of a national banking association doing business within this

duties under c. 168, § 51 (as so appearing). The substantive issue is whether a national banking association organized by a conversion from a State trust company pursuant to U. S. Rev. Stat. (1875) § 5154, 12 U. S. C. (1958) § 35, and G. L. c. 172, § 44, as amended, retains its former corporate identity to the extent that the dividend record of the trust company may be considered that of the national bank for the purpose of qualifying the stock of the national bank as a legal investment for Massachusetts savings banks under c. 168, § 47 (as so appearing).

We think that this does not become a case arising under c. 168 merely because the questions raised have their origin in that chapter. See *Republic Pictures Corp.* v. *Security-First Natl. Bank,* 197 F. 2d 767, 769–770 (9th Cir.). The key to the solution appears in the five sections mentioned by the Commissioner of Banks in each of which a definite procedure in the Supreme Judicial Court is prescribed. G. L. c. 168, §§ 40, 44 (see now c. 168, § 25 (4), § 32, both as appearing in St. 1955, c. 432, § 1). G. L. c. 172, § 18, as amended through St. 1935, c. 18. G. L. c. 172, § 25, as amended through St. 1934, c. 349, § 15. G. L. c. 172, § 90, inserted by St. 1933, c. 273. Before the enactment of St. 1941, c. 28, there were numerous provisions in the general banking statute for similar definite procedures in the Supreme Judicial Court. G. L. c. 167, §§ 5 (as appearing in St. 1933, c. 337), 7, 24 (as amended through St. 1933, c. 41, § 4), 26, 27, 29, 30, 31A (as appearing in St. 1937, c. 170), 32–34, 35A (inserted by St. 1933, c. 302), 36 (as amended through St. 1939, c. 451, § 58), 40. G. L. (Ter. Ed.) c. 167, §§ 13, 31, 35.

These sections providing definite procedures in the Supreme Judicial Court are what is meant in c. 213, § 1A, by cases arising under cc. 167, 168, and 172. There was jurisdiction in the Superior Court.

commonwealth, which, in either case, in each of the five years immediately preceding the date of investment, has paid dividends in cash of not less than four per cent on its common stock without having reduced the aggregate par value thereof within such five year period, and which, in either case, at the date of investment, has surplus at least equal to fifty per cent of its capital stock."

Turning to the merits, we note that if this were the reverse situation of a national banking association converting into a State trust company, a question similar to the present could not arise. By c. 172, § 44 (as appearing in St. 1955, c. 275, § 1), "the continuing trust company . . . into which a national banking association shall have been converted under this section shall be considered the same business and corporate entity as that of the . . . converting institution, although the rights, powers and duties of the continuing trust company shall be those established by its charter." For the parallel Federal provision, see 12 U. S. C. (1958) § 214b. All that § 44 contains respecting the present problem is, "Nothing in this section nor in the General Laws shall restrict the right of a trust company . . . to . . . convert into a national banking association in accordance with the laws of the United States and without approval of any authority of the commonwealth."

The plaintiff contends, and the defendant denies, that the mere fact of conversion, as matter of law, has no effect upon the qualification of the plaintiff's common stock as a legal investment for savings banks.

The defendant's position on the merits seems to us to be based upon oversimplification. The argument, shortly stated, is that the charter of the Worcester County Trust Company became void on January 12, 1959, and that the plaintiff came into corporate existence on the same date. Ergo, it could not have paid dividends for a five year period. Reference is made to the last sentence of c. 172, § 44, which reads, "The charter of any trust company or banking company which shall have been consolidated or merged into or the business and substantially all of the property and assets of which shall have been purchased or absorbed by a trust company or national banking association, or the affairs of which shall have been liquidated, shall be void except for the purpose of discharging existing obligations and liabilities." It will be noted that there is no reference to conversion in this sentence, although there are numerous such references elsewhere in § 44. Even though the charter became

void on the date of conversion, that would not be decisive as to whether, to quote a word from § 44, the "continuing" banking institution was the same entity for the purpose of having a record of dividend payments for at least five years. See *Deitrick* v. *Siegel,* 313 Mass. 612, 621.

We would be loath to reach the conclusion that the plaintiff could not qualify its common stock under c. 168, § 47, as appearing in St. 1955, c. 432, § 1. We note in the agreed facts that the trust company had, and since its conversion the plaintiff has continued to have, among its stockholders Massachusetts savings banks which owned, and still own, a substantial percentage of the plaintiff's outstanding common stock. Certainly no useful purpose would be served by forcing sales of this stock, and we are of opinion that the banking statutes do not require it.

We would be apprehensive that a construction of our statutes in support of the commissioner's ruling might be violative of one or more provisions of the Constitution of the United States. The plaintiff urges that such a construction would result in discrimination against national banking associations in favor of trust companies, and cites *First Natl. Bank* v. *Missouri,* 263 U. S. 640, 656, where it was said, ". . . national banks are subject to the laws of a State in respect of their affairs unless such laws interfere with the purposes of their creation, tend to impair or destroy their efficiency as federal agencies or conflict with the paramount law of the United States." For cases of similar conflicts, see *Commissioner of Corps. & Taxn.* v. *Flaherty,* 306 Mass. 461; *Springfield Inst. for Sav.* v. *Worcester Fed. Sav. & Loan Assn.* 329 Mass. 184, 189, citing *Kelly* v. *Washington,* 302 U. S. 1, 10. "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score. *United States* v. *Delaware & Hudson Co.* 213 U. S. 366, 408." Mr. Justice Holmes in *United States* v. *Jin Fuey Moy,* 241 U. S. 394, 401. *Panama R.R.* v. *Johnson,* 264 U. S. 375, 390. *Ferguson* v. *Commissioner of Corps. & Taxn.* 316 Mass. 318, 323–324. *New England Tel. & Tel. Co.* v. *National Merchandising Corp.* 335 Mass. 658, 664.

In *Metropolitan Natl. Bank* v. *Claggett,* 141 U. S. 520, a
New York State bank in 1865 converted into a national bank
under a New York statute.   In 1886 a holder of notes de-
livered by the State bank brought an action in the Supreme
Court of New York against the national bank, which set up
a statute of limitations which required that the notes be
presented within six years after "closing the business of
banking."   The New York court decided "that the change
or conversion of the Metropolitan Bank into the Metro-
politan National Bank did not 'close its business of bank-
ing' nor destroy its identity or its corporate existence, but
simply resulted in a continuation of the same body with the
same officers and stockholders, the same property, assets, and
banking business under a changed jurisdiction; that it re-
mained one and the same bank, and went on doing business
uninterruptedly; and that, therefore, the statutory proceed-
ings relied upon in the answer could not operate as a bar to
the liability of either bank to pay the bills delivered by the
Metropolitan Bank in 1861 to plaintiffs' intestate."   In
affirming the judgment, the Supreme Court of the United
States stated, "This decision is so manifestly correct that it
needs no argument to sustain it" (page 527).

In *Michigan Ins. Bank* v. *Eldred,* 143 U. S. 293, a State
bank had converted into "a national bank, and [there was
evidence that] its name [had] been changed accordingly,
without affecting its identity, or its right to sue upon ob-
ligations or liabilities incurred to it by its former name"
(page 300).   The defendant, who was sued upon an obliga-
tion to the State bank, pleaded nul tiel corporation.   The
trial judge refused to strike out the evidence summarized
above.   In the opinion of the court, reversing a judgment
for the defendant, Mr. Justice Gray said, "The reason as-
signed by the judge for refusing to grant this motion was his
erroneous opinion that on the proof as it stood 'the Michigan
Insurance Bank became defunct and ceased to exist in 1865,
when the national bank was organized' . . ." (Pages 300–301).

These two cases are cited in the plaintiff's brief.   The
defendant has made no effective answer to them.   We

have no reason to doubt that they would be followed today.

The continuing identity of a bank has been recognized in some of our own cases. In *Atlantic Natl. Bank* v. *Harris,* 118 Mass. 147, a State bank converted into a national banking association. The holding was that the latter succeeded to a cause of action of the former without formal assignment (page 151). In *Iowa Light, Heat & Power Co.* v. *First Natl. Bank,* 250 Mass. 353, 354 (as explained in *Atlantic Natl. Bank, petitioner,* 261 Mass. 217, 220–221), it was held that a national bank which first converted from a State trust company and then consolidated with another national bank continued the identity of the State trust company so as to remain the trustee under a corporate indenture without need for reappointment. In *Deitrick* v. *Siegel,* 313 Mass. 612, a national bank resulting from the consolidation of a State trust company and a national bank was held to continue the identity of the trust company so far as to stand in the same relationship to the maker of a note as the State trust company, the original payee.

Three cases of consolidations declined to accept the theory of a continuing identity. *Commonwealth-Atlantic Natl. Bank, petitioner,* 249 Mass. 440. *Atlantic Natl. Bank, petitioner,* 261 Mass. 217. *Worcester County Natl. Bank, petitioner,* 263 Mass. 444; affd. 279 U. S. 347. They have since been confined in "application to positions of trust requiring judicial approval and appointment." *Deitrick* v. *Siegel,* 313 Mass. 612, 619. Whether they should be again reconsidered to determine if any further limitation should be made does not fall within the scope of our present duty. It will be noted that a conversion and a consolidation are not the same. "Plainly the conversion of a State bank into a national bank under consideration in the two cases last cited[1] differs in essential particulars from a consolidation such as is disclosed on this record." *Worcester County Natl. Bank, petitioner,* 263 Mass. 444, 453.

[1] *Michigan Ins. Bank* v. *Eldred,* 143 U. S. 293, 300, *supra.* *Metropolitan Natl. Bank* v. *Claggett,* 141 U. S. 520, 527, *supra.*

The interlocutory decree overruling the demurrer is affirmed. A final decree is to be entered which declares that the capital stock of the plaintiff is a legal investment for Massachusetts savings banks under G. L. c. 168, and which orders the defendant to place the stock on the list prescribed by G. L. c. 168, § 51, as appearing in St. 1955, c. 432, § 1.

*So ordered.*